(March 6, 1926.)

W. T. BOOTH, Respondent, v. ETHEL T. CLARK, County Treasurer and *Ex-Officio* Tax Collector of Ada County, Idaho, Appellant.

[244 Pac. 1099.]

TAXATION—SPECIAL DRAINAGE DISTRICT ASSESSMENTS—DUTY OF TAX COLLECTOR—STATUTORY CONSTRUCTION—MANDAMUS PROPER REMEDY.

1. Notwithstanding C. S., secs. 4527, 4552, providing that the amount of drainage district assessments shall be added to the general taxes of the land owners and collected therewith, the collector must receive general taxes tendered by a taxpayer who refuses to pay a drainage district assessment, in view of sections 3234, 3237–3241, 3251, 4549; Laws 1923, chap. 134, sec. 2.

2. There is no statute in this state prohibiting a taxpayer from paying his general property tax without at the same time paying a drainage district assessment, and the tax collector is not authorized to enforce the collection of the drainage assessment by refusing to accept general taxes, payment of which is tendered without including the amount of the drainage district assessment.

3. *Mandamus* is the proper remedy to invoke to compel a tax collector to perform his official duty with regard to the receipt of taxes.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Dana E. Brinck, Judge.

Action for a writ of mandate. Judgment for plaintiff. *Affirmed.*

Laurel E. Elam, P. E. Cavaney, Martin & Martin, Reddoch & Hunter and Harry S. Kessler, for Appellant.

The statutes of this state relating to the collection of drainage taxes require that the same be added to the general taxes of the person or corporation and collected therewith by the tax collector at the time of the collection of the general taxes of such person or corporation. (C. S., secs. 4527, 4547, 4549, 4552, 3234, 3237, 3238, 3239, 3240, 3241 and 3251; sec. 2, chap. 134, Idaho Sess. Laws 1923; *Moore v. Gas Securities Co.*, 278 Fed. 111; *Thomas v. City of Missoula*, 70 Mont. 478, 226 Pac. 213.)

The writ of mandate will not issue where the party applying therefor has a plain, speedy and adequate remedy at law. (Idaho Sess. Laws 1921, chap. 107, p. 249; C. S., sec. 7255; *Beem v. Davis*, 31 Ida. 730, 175 Pac. 959; 4 Cooley on Taxation, 4th ed., sec. 1647, p. 3328; *Bradford v. Snell*, 80 Okl. 56, 193 Pac. 892; *Singer Sewing Mach. Co. v. Benedict*, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. ed. 1288; *Union Pacific R. Co. v. Board of Commrs.*, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. ed. 1110; *State v. Turner*, 113 Wash. 214, 193 Pac. 715.)

Publisher's Note.
3. See 18 R. C. L. 288; 26 R. C. L. 379.

See Drains, 19 C. J., sec. 207, p. 714, n. 9, 10, 11; sec. 219, p. 720, n. 93; sec. 231, p. 729, n. 56.
Taxation, 37 Cyc., p. 1160, n. 37.

J. B. Eldridge, for Respondent.

The county treasurer had no authority to demand the payment of special assessments against the wish of the taxpayer. (*Hackney v. Elliott,* 23 N. D. 373, 137 N. W. 433; *Moore v. Furteneau,* 20 N. D. 540, 129 N. W. 81.)

A drainage assessment is a special assessment and not a tax. (*Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785; *Interstate Trust Co. v. Montezuma Valley Irr. Dist.,* 66 Colo. 219, 181 Pac. 123.)

"But a taxpayer may pay the tax on some of his property without paying the tax on other property separately assessed or the amount of one tax without paying other taxes." (3 Cooley on Taxation, 4th ed., p. 2492.)

The cases turn on the proposition that the statute does not prohibit the taxpayer from paying any one of his taxes as he may elect. We have no such statute in Idaho. (*Howell v. Lamberson,* 149 Ark. 183, 231 S. W. 872.)

BUDGE, J.—On December 10, 1924, the plaintiff, on his own behalf and on account of a large number of taxpayers similarly situated, filed a petition in the district court for a writ of mandate, praying that defendant in her official capacity as treasurer and *ex-officio* tax collector be required to accept state, county, city and school taxes theretofore duly levied against certain real estate owned by him and falling due in the year 1924, exclusive of the drainage assessment falling due in the same year.

From the petition, *inter alia,* it appears that the plaintiff and numerous taxpayers owned real property within Drainage District No. 3; that on December 10, 1924, plaintiff tendered in lawful money to the defendant the sum of $42.84, the amount of taxes levied against his real property, except the assessment for Drainage District No. 3, in the amount of $28.51; and, that the defendant refused to accept the state, county, city and school taxes for the reason that plaintiff refused to pay the drainage assessment.

Upon the presentation of the petition in the district court an order was made directing that an alternative writ of

mandate issue. An alternative writ, requiring defendant to accept the money tendered for general taxes, or show cause for not doing so, was issued and served upon the defendant, to which petition, order and writ she interposed a general demurrer. The demurrer was by stipulation of the parties deemed to be an answer to the petition and upon this record a hearing was had and the demurrer overruled. Upon the same date the court made an order in due form directing the issuance of a peremptory writ of mandate, and upon such order a writ requiring the defendant to accept the general taxes less the drainage assessment was issued and served. From such final order this appeal is taken.

There is but one specification of error, that "the court erred in denying and overruling the demurrer and holding the same to be insufficient as an answer to respondent's petition, and in issuing its judgment and order that the peremptory writ of mandate issue as prayed for in the petition."

The question here for determination is whether the plaintiff had a right to pay general taxes assessed against his property, and then due, and refuse to pay the drainage assessment on the same property.

The assessment by the drainage commissioners was levied for the following purposes, to wit:

"For payment of interest on said bonds.............. 6%
For creating sinking fund for payment of principal and
    on said bonds................................... 1%
For maintenance, repairs and water development during
    year of 1925................................5½%"

C. S., sec. 4549, is the basis upon which the six per cent levy was apparently made, and provides that "it shall be the duty of such drainage commissioners annually to levy an assessment sufficient for the payment of the coupons hereinbefore mentioned as they fall due."

The five and one-half per cent levy for maintenance and repairs is based upon C. S., sec. 4552, which provides, among other things, "and the amount thereof shall be apportioned to the landowners in such district benefited by said improvement in proportion to the maximum benefit originally as-

sessed, and such amount shall be added to the general taxes of such landowners and collected therewith.''

Sess. Laws 1923, sec. 2, c. 134, p. 196, after conferring authority to make a levy for water development, provides '' . . . . which shall be levied and collected in the same manner as funds are now levied and collected for the maintenance of the drainage works and the funds so obtained may be expended for the purposes authorized by this act.''

The one per cent levy for sinking fund is based upon C. S., sec. 4547, which provides that ''at least five years before said bonds shall become due, the drainage commissioners of such district issuing them are hereby authorized and required, annually, to levy an assessment sufficient to liquidate said bonds at maturity.''

C. S., sec. 4527, provides for the filing of the copy of the assessment-roll by the clerk of the district court with the county auditor, who shall enter the same upon the tax-roll in his office as provided by law for the entry of other taxes against the land of each of said persons named in the list, together with the amount thereof and the same shall be subject to the same interest and penalties in case of delinquency as in case of general taxes, and shall be collected in the same manner as other taxes and subject to the same right of redemption, and the lands sold for the collection of said taxes (assessments) shall be subject to the same right of redemption as land sold for general taxes, and said section further provides:

''That said assessment shall not become due and payable except at such time or times and in such amounts as may be designated by the board of commissioners of said drainage district, which designation shall be made to the county .auditor by said board of commissioners of said drainage district, by serving written notice upon the county auditor designating the time and the amount of the assessment, said assessment to be in proportion to the benefits to become due and payable which amount shall fall due at the time of the falling due of general taxes, and the amount so designated shall be added by the auditor to the general taxes of said person, persons or corporation, according to said notice, upon

the assessment rolls in his said office, and collected therewith
. . . ."

[1]   We have, therefore, a case in which assessments have
been made by the drainage commissioners within the various
provisions of the statutes cited, and where it also appears
that the legislature has availed itself of the ordinary ma-
chinery of the county government for the purpose of enabling
the drainage district to collect assessments levied.   There
is no question here involving the illegality of the assessments.

Appellant contends that, under the provisions of these
statutes, the tax collector is required, not only to add the
drainage assessment to the general taxes of all land owners
within the district, but that it is her mandatory duty to
collect both taxes and assessments at the same time, and
that no land owner within the drainage district, against
whose real property an assessment has been levied, is per-
mitted to pay his general taxes without also paying his drain-
age assessment.

Appellant further contends that it was the intention of
the legislature, as appears from sections of the statutes here-
inafter cited, that general taxes and drainage district assess-
ments are merged in and are to be considered as a part of
the general tax.   In support of this contention our attention
is called to C. S., sec. 3234, which provides that all taxes
shall be payable without penalty on and after the fourth
Monday of November in the year in which they are levied
and prior to the fourth Monday in December, and all taxes
not so paid shall be delinquent.   Said section also provides
that a taxpayer may pay one-half of his taxes within the
time aforesaid, and the time to pay the balance is extended
to the fourth Monday of June thereafter.   C. S., sec. 3237,
provides that the receipt for taxes to be delivered to the
taxpayer shall separately show the amount of state, county,
city, town, village, school district and every other tax levied
against the property.   C. S., sec. 3238, provides that the
original and duplicate receipts must not be signed by the
tax collector except upon the payment of the taxes.   C. S.,
sec. 3239, requires the tax collector to keep a collection

register in which must be entered the amount of county, city, town, village, school district or other taxes collected.

C. S., secs. 3240, 3241 and 3251, provide that upon payment of the taxes a receipt shall be given therefor, that the entry of delinquency shall be dated as of the first Monday of January of each year, and shall have the force and effect of a sale to the tax collector as grantee in trust for the county for all property entered upon the real property assessment-roll on which one-half of the original amount of such taxes has not been paid, and for the redemption of property from a tax sale and the apportionment of the funds received by reason of such redemption.

In construing these statutes it may be well to point out that assessments levied within a drainage district are not taxes, within the meaning of that term as it is usually employed in our constitution and statutes, although laid under a taxing power.

In *Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785, it is held that assessments levied and collected under the drainage district law do not constitute a tax within the purview of the constitution, but, rather, are an exercise of the power of the state for the general welfare. Such assessments are made only in accordance with the benefits to be received, and, where no benefits will accrue, no assessments can lawfully be made. No question of taxation for governmental purposes, or for the maintenance of the governmental functions of the state, is raised by these drainage assessments.

Assessments for drainage district purposes are based upon benefits to accrue to the land owner within the district, and must advance his proprietary interest. Taxes are levied for governmental purposes. There is thus a marked distinction between assessments and taxes, and, necessarily, the construction of the statutes with reference to taxes will not be the same as when construed with reference to assessments.

There are cases which hold that while special assessments for local benefit are taxes in a general sense, in that the authority to levy them must be derived from the legislature, they are, nevertheless, not to be considered as taxes falling within the restraints imposed by the constitution, although

the principle of uniformity governs both. (2 Cooley on Taxation, 3d ed., 1181; *Raleigh v. Pease,* 110 N. C. 32, 14 S. E. 521, 17 L. R. A. 330.)

Much stress is laid upon the provisions of the statute, C. S., sec. 4552, which provides, "and such amount," referring to the levy for maintenance and repair, "shall be added to the general taxes of such land owners and collected therewith"; and C. S., sec. 4527, where the following language is used, "and shall be collected in the same manner as other taxes and subject to the same right of redemption," and "the amount so designated shall be added by the auditor to the general taxes of said person, persons or corporation, according to said notice, upon the assessment-rolls in his said office, and collected therewith"; also C. S., sec. 4527, where the following language is found, "and shall be collected in the same manner as other taxes and subject to the same right of redemption," and "the amount so designated shall be added by the auditor to the general taxes of said person, persons or corporation, according to said notice, upon the assessment rolls in his said office, and collected therewith"; and further, C. S., sec. 3239, which requires the collector to keep a collection register in which must be entered the amount of state, county, city, town, village, school district or other tax collected.

It will be observed that our statutes contain no prohibition restraining the tax collector from receiving the general taxes to the exclusion of the drainage district assessment, but provide for the certification to the auditor of the drainage district assessment and authorize him to receive payment thereof at the same time that the general taxes are paid, and, if not paid, the assessment becomes delinquent and the land is subject to sale and redemption, as in the case of a sale for general taxes.

The Oregon statutes upon the subject under consideration are analogous to our own. The supreme court of that state has held, as to a special road tax, that a taxpayer has a right to pay his general tax without paying the special road tax. (*Central Pac. Ry. Co. v. Gage,* 96 Or. 192, 189 Pac. 643.)

The supreme court of Arkansas has applied the same rule to a special drainage tax. (*Howell v. Lamberson*, 149 Ark. 183, 231 S. W. 872; *Eason v. Prairie Pipe Line Co.*, 149 Ark. 669, 234 S. W. 165.) The supreme court of Colorado has likewise applied the rule to the payment of irrigation district taxes in the face of a statute requiring the county treasurer to collect and receipt for such taxes in the same manner and at the same time and on the same receipt as is required in the collection of taxes on real estate for county purposes. (*Interstate Trust Co. v. Smith*, 66 Colo. 525, 181 Pac. 126; *Interstate Trust Co. v. Montezuma Valley Irr. Dist.*, 66 Colo. 219, 181 Pac. 123; see, also, *Hackney v. Elliot*, 23 N. D. 373, 137 N. W. 433; *State ex rel. Moore v. Furstenau*, 20 N. D. 540, 129 N. W. 81.)

Under the authorities above cited it would seem that the law is well settled that a tax collector must receive general taxes that are tendered by a taxpayer, although the latter refuses to pay special assessments levied by the board of commissioners of a drainage district.

The payment of the general taxes, to the exclusion of the drainage assessment, in no manner interferes with the statutory lien in favor of the drainage district or its enforcement.

[2] Since there is no statute in this state that prohibits a taxpayer from paying his general tax to the exclusion of a drainage district assessment, there is no authority for holding that it is the mandatory duty of the tax collector to refuse to accept general taxes tendered where the taxpayer refuses to pay the drainage assessment. The drainage assessment having been placed upon the tax-roll with the other taxes, it is the duty of the tax collector to receive payment and to receipt therefor and to inform the taxpayer of the assessment and that the same is a lien upon his property, but the tax collector is not authorized to enforce its collection by refusing to accept general taxes.

[3] From the preceding authorities it will be noticed that the law is well settled that mandate is the proper remedy to apply in a proceeding of this nature.

It is our conclusion that the trial court was right in granting the peremptory writ. The judgment is sustained, and costs are awarded to the respondent.

William A. Lee, C. J., and Givens, J., concur.

WM. E. LEE, J., Dissenting.—While it may be preferable for the legislature to permit the payment of general taxes without requiring the payment at the same time of drainage assessments, this court is not the legislature; and our proper and legitimate function is to determine solely and only whether the legislature has in fact required that such taxes and assessments be paid at the same time. The majority opinion seems to be based on the premise that since "our statute contains no prohibition restraining the tax collector from receiving the general taxes to the exclusion of the drainage district assessments," he must accept general taxes offered by the taxpayer without requiring the payment at the same time of drainage assessments, notwithstanding the express provision of the statute to the contrary. The premise of the majority should have no application in this case. The most favorable rule that can be invoked by the taxpayer is that, in the absence of a statute to the contrary, a taxpayer may pay one tax against his land and refuse to pay another tax separately entered against it. In this state the statute is "to the contrary." The legislature has enacted that *drainage assessments "shall be added to the general taxes of such land owners and collected therewith"* (C. S., sec. 4552); *and the amount of such assessments shall be filed with the auditor who shall enter the same on the tax-rolls of his office, "as provided by law for the entry of other taxes, against the land of each of said persons . . . . and shall be collected in the same manner· as other taxes . . . . , which amount shall fall due at the time of the falling due of general taxes, and . . . . shall be added . . . . to the general taxes of said person . . . . upon the assessment-rolls in his said office, and collected therewith."* (C. S., sec. 4527.)

Under these and other provisions of the statute, drainage assessments must be entered on the real property assessment-roll, all taxes on such roll must be added together and all or half of the total must be paid prior to the fourth Monday of December. The collector has no discretion other than to accept payment of either all or one-half of the total of taxes and assessments on the real property assessment-roll (C. S., sec. 3234). The legislature was within its unquestioned power in providing the manner and time for assessing, levying and paying both general taxes and drainage assessments; and the distinction between taxes and assessments is of no consequence whatever, in this connection, other than to confuse the issue. (*Thomas v. City of Missoula,* 70 Mont. 478, 226 Pac. 213.)

The authorities relied on by the majority are of little consequence. They are from other states and were based on statutes and facts materially different from those confronting us. This is especially true of the cited decisions from North Dakota. In this case there is no suggestion that the drainage assessment is illegal and its payment is in no manner contested. The Oregon case is on the theory that a taxpayer could pay his legal taxes and contest a void road tax. The second Arkansas case followed the first which recognized one's right to pay legal taxes while contesting an alleged illegal assessment. In the Colorado cases sufficient levies had been made to pay certain irrigation district warrants, but a number of delinquencies had occurred and it was sought to require a higher levy to make up for the delinquencies. The two cases together held that this could not be done and permitted the payment of general taxes without paying the irrigation taxes.

The United States circuit court of appeals, in a well-considered opinion, reached a different conclusion from that arrived at by the Colorado court in cases cited in the majority opinion. It discusses the question fully and is contrary to the majority opinion. (*Moore v. Gas Securities Co.,* 278 Fed. 111. See, also, opinion by Judge Brewer in *Julien v. Ainsworth,* 27 Kan. (31 Pac. St.) 446; 37 Cyc.

1164; 2 Cooley on Taxation, 3d ed., 806; and *Thomas v. City of Missoula, supra.*)

The action of the majority amounts to judicial legislation, pure and simple; and the decision, in effect, sets aside laws enacted by the legislature in the exercise of that body's unquestioned power.

Taylor, J., concurs.