(No. 6409.    May 15, 1937.)

H. H. SMITH, Respondent, v. CITY OF NAMPA, a Municipal Corporation of Canyon County, Idaho, ELVA G. MILLER, Treasurer of the City of Nampa, Idaho, NAMPA & MERIDIAN IRRIGATION DISTRICT, a *Quasi*-municipal Corporation, THOS. S. LYDA, WALTER T. EVANS and H. L. RANDALL, the Board of Directors of the Nampa & Meridian Irrigation District, and BESSIE R. ROUSE, the Treasurer of the Nampa & Meridian Irrigation District, Appellants.

[68 Pac. (2d) 344.]

Frank F. Kibler, for Appellants City of Nampa and its treasurer.

Wm. B. Davidson, for Appellants Nampa & Meridian Irrigation District, its directors and treasurer.

738

Creed W. Mullins, for Respondent.

Thompson & Stout, R. B. Scatterday, Karl Paine, Maurice H. Greene and Cleve Grome, *Amici Curiae.*

AILSHIE, J.—This is an action to quiet title. Judgment was entered in favor of the plaintiff and defendants appealed. Respondent is the owner of Block 16, Pleasants Addition, and Block 13, Homestead Addition, to the City of Nampa. Both tracts are located within the boundaries of the Nampa & Meridian Irrigation District. A part of these two tracts is situated in Sewer District No. 22 and the balance in Sewer District No. 26, in the City of Nampa.

Prior to 1920 Nampa & Meridian Irrigation District acquired title to the Ridenbaugh canal system and the waters diverted thereby and appurtenant water rights, including a water right acquired from the Boise Project of the United States Reclamation Service, together with an interest in the project works sufficient for the carriage of the waters necessary to supply the water users under the Ridenbaugh canal system. At that time the irrigation district apportioned 1.125 inches of water from the Ridenbaugh canal water rights and 1.352 acre-feet of water from the water rights acquired from the Boise Project to Block 13 of Homestead Addition to the City of Nampa, and duly assessed the cost thereof to that block. The annual assessments for these benefits were paid up to 1928 except a balance of $26.66 for the Ridenbaugh water right and a balance of $81.25 on account of the assessments to cover the contracts for the purchase of the water rights from the Boise Project, which unpaid balances were evidenced by outstanding bonds of the district.

Prior to 1920 the Nampa & Meridian Irrigation District also apportioned water rights from its Boise Project allotment to Block 16, Pleasants Addition, and prior to 1928 had collected all the assessments against that block excepting a balance of $138.60, which represented a past due assessment collectible by the district and owing to the United States on the contract of purchase of water rights from the Boise Project. During 1928, and each succeeding year including 1935, the Nampa & Meridian Irrigation District made an annual assessment against Block 13 sufficient to defray the balance of the unpaid purchase price of the water right for said tract and to meet the operating maintenance charges for the district. In 1926 and each year thereafter, up to and including 1935, it made similar annual assessments for like purposes against Block 16. The assessments for the year 1926 were not paid and a deed issued to the district for Block 16, Pleasants Addition, July 23, 1930; and the assessments for the year 1928 on Block 13 were not paid and a deed issued to the district therefor on June 1, 1932.

It appears that the proceedings were, in all respects, regular in accordance with the statute, in the matter of apportionment of benefits, laying of annual assessments, entry

of delinquencies and issuance of deeds. It further appears that a part of the assessments, made subsequent to the issuance of the tax deeds, had been certified to and became a part of the records of the recorder's office of Canyon county, and that the balance of said assessments was carried on the records of the district.

It also appears that prior to 1921 the City of Nampa duly and regularly adopted ordinances creating Sewer Improvement Districts Nos. 26 and 22, which districts comprised both Blocks 16 and 13, and duly and regularly assessed and apportioned benefits to the various tracts of land within the respective districts, including the lands herein involved for sewerage improvement; and that such apportionments of benefits were duly approved and confirmed. It was further provided that the assessment of benefits should be paid in annual instalments. Annual assessments were duly levied and certified up to and including the year 1926 and were duly certified to the treasurer of Canyon county for collection. These assessments were levied and became a lien on the property involved herein prior to the date of the acquisition of plaintiff's title. Subsequent to the year 1926 the instalments of assessments have been carried on the rolls of the City of Nampa but up to and including 1926 the annual assessments for both districts (26 and 22) were certified to the treasurer of Canyon county for collection. The county treasurer's books showed improvement district assessments on Block 16 delinquent for 1926 and like assessments against Block 13 delinquent for 1924, 1925 and 1926. The rolls in the treasurer's office of the City of Nampa showed unpaid improvement district instalments levied against Block 16 for 1927, 1928, 1929 and 1930, and unpaid like instalments levied against Block 13 for 1927, 1928, 1929 and 1930.

In the meanwhile the state and county taxes were regularly levied and assessed against these tracts of land; the taxes on Block 13 for the year 1925 and subsequent years were not paid; and January 4, 1930, this block was deeded to Canyon county for taxes levied against it for 1925; the taxes on Block 16 for 1926 and subsequent years were not paid and January 5, 1931, the property was deeded to Canyon county for the 1926 delinquent taxes. March 27, 1935, the county

sold and conveyed Block 16 to plaintiff and February 28, 1934, it sold and conveyed Block 13 to plaintiff. It is agreed that the proceedings were all regular, both in the taking of the deeds by the county and in the conveyance of the property to plaintiff. No question is raised here as to the regularity of any of the proceedings leading up to the execution and delivery of the various deeds mentioned. A sprinkling tax was also involved in the issues but it is admitted that the proceedings laying that tax were irregular and that it is void.

The trial court entered a decree quieting respondent's title to both tracts in issue and directing that the treasurer of the City of Nampa cancel on the records of her office all City of Nampa assessments, levied against the lands in question for Sewer Districts 22 and 26; that the treasurer of Canyon county cancel on the rolls in her office all City of Nampa assessments; that the treasurer of the Nampa & Meridian Irrigation District cancel upon the rolls of the district all irrigation assessments levied against Block 16 prior to March 27, 1935, and all irrigation assessments levied against Block 13 prior to February 28, 1934; that the recorder of Canyon county cancel upon the records in his office all irrigation district assessments certified to his office by the Nampa & Meridian Irrigation District on Block 16 prior to March 27, 1935, and all assessments which had been certified to him by the Nampa & Meridian Irrigation District on Block 13 prior to February 28, 1934.

The question which confronts us on this appeal is: Did the county's deeds convey these two tracts of land to respondent free from the assessments levied by the irrigation district and the assessments levied by the city for the benefit of the sewerage improvement districts?

It seems to us that sections 61–1032 and 42–718, I. C. A., when read together and construed in the light of section 7, article 7 of the constitution, make it plain that it was the intention of the legislature to carry out the mandate of the constitution, to the effect that ''taxes levied for state purposes,'' shall be a prior and superior lien to all other taxes, assessments, liens or incumbrances of whatsoever kind or character. (*Cunningham v. Moody*, 3 Ida. 125, 28 Pac.

395; *Guheen v. Curtis,* 3 Ida. 443, 31 Pac. 805; *Epperson v. Howell,* 28 Ida. 338, 154 Pac. 621.)

It was consequently provided by the legislature that, where an irrigation district was compelled to take a deed for delinquent assessments, such deed should convey an ''absolute title to the lands described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as in this chapter provided, and except any lien for assessments which have attached subsequent to the assessment resulting in the *sale and except for any lien for state and county taxes.*'' (Sec. 42–718, I. C. A.; italics ours.)

It will thus be seen that the legislature never contemplated that a sale for irrigation district assessments could ever become superior to a ''lien for state and county taxes.'' On the other hand, when the legislature came to dealing with the general subject of ''Payment and collection of taxes on real property'' (chap. 10, Title 61), it provided that where the tax has not been paid, and it has become necessary for the county to take title to the property, it may thereafter proceed to sell the property and that,

''The deed conveys to the grantee the absolute title to the land described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 61–1027 and except any lien for taxes which may have attached subsequently to the assessment.'' (Sec. 61–1032, I. C. A.)

We understand it to have been the legislative intention, by this provision, that, when the county takes a deed under sections 61–1026 to 61–1032, inclusive, it takes a clear title to the property ''free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 61–1027 and except any lien for taxes which may have attached subsequently to the assessment.'' It was held by this court in *State v. Stuart,* 41 Ida. 126, 238 Pac. 305 (cited with approval in *Larson v. Gilderoy,* 45 Ida. 764, 767, 267 Pac. 234, and *Heffner v. Ketchen,* 50 Ida. 435, 440, 296 Pac. 768), that the statute reserved to the county a lien for tax delinquencies occurring subsequently to the assessment for which the county took the tax deed.

Carrying out this line of thought, and what is believed to have been the legislative intention, the legislature at its 1927 session provided for sale by the county of property acquired through such tax deeds and defined the title that should be conveyed *by deed from the county to a purchaser* as follows:

"Any such sale made by the board of county commissioners of property acquired through tax deed shall, subject to the provisions of this section, vest in the purchaser all of the right, title and interest of the county in the property so sold, *including all delinquent taxes which have become a lien on the property since the date of the tax sale certificate upon which any tax deed has been issued,*" etc. (Sec. 30–708, I. C. A. Italics ours.)

Under the decision of this court in *Heffner v. Ketchen, supra,* the foregoing statute was construed as vesting in a purchaser from Ada county of real property acquired by the county through tax deed, a title "free of the lien of all state, county, municipal and school district taxes *and drainage district assessments* attaching since the first Monday in January, 1925 [the date on which the tax attached for which deed to the county was made], upon entry of delinquency which had the force and effect of a sale in trust for the county, under C. S. sec. 3241."

That decision appears to express a reasonable construction of section 30–708, *supra,* as enacted in 1927. It should be observed, however, that in holding local improvement "assessments" to be "taxes," within the purview of sections 30–708 (3423, C. S.) and 61–1032 (3263, C. S.), the court was dealing with and referring to annual instalment assessments as spread on the tax rolls for a specific year, and was not considering and did not include therein an entire or aggregate apportionment of benefits to be paid in a number of annual instalments to be subsequently levied, certified and entered on the rolls each year against the several tracts of land in the assessing district.

No valid reason has been advanced for making any distinction between an assessment levied by a drainage district and one levied by an irrigation district,—each is a charge and lien against the lands of the district; and the fact that

one (drainage district assessment) is paid to and collected by the county and the other by the irrigation district can make no difference with the title the county acquires by a tax deed; it is, and should be, as absolute in the one case as in the other.

The quotation from section 30–708, hereinbefore set out, having been incorporated in the statute by the 1927 legislative session (Sess. Laws 1927, chap. 159), it is now urged by appellants that, since this statute was enacted subsequent to the apportionment and confirmation of benefits in the respective taxing districts herein affected, it cannot apply in this case. We think the objection untenable for the reason that the taxing units and all persons dealing with them had notice of the constitutional taxing power of the state and county and that such taxes constitute a lien superior to all other claims or liens. (Sec. 7, art. 7, and cases cited, *supra.*) In the second place the bond and assessment creditors, as well as mortgagees and other lienholders, of any of these taxing units or districts, and the districts as well, have the right to protect themselves and preserve their tax or assessment liens by paying the state and county taxes or redeeming from tax sale at any time before the property is finally sold by the county. (Sec. 61–1023, I. C. A.; *Johnson v. Sowden,* 25 Ida. 227, 136 Pac. 1136; *Rice v. Rock,* 26 Ida. 552, 144 Pac. 786.) That is the reason for service of the notices required by sec. 61–1027, I. C. A., before issuance of tax deed and is further manifested in the requirement that any mortgagee or lienholder, who wishes notice of the tax delinquency, shall file a request for such notice with the treasurer. In this respect a bondholder is placed in the same position as a mortgagee or other lienholder and is afforded equal means of protecting his security.

When superficially viewed, some of our decisions may seem in conflict on these issues but it is believed that such is not the case and that if they are read in the light of the law, *as it appeared on the statute books at the time the particular actions arose,* such seeming conflict will disappear.

The judgment of the district court should be affirmed, and it is so ordered. Costs awarded to respondent.

Budge and Givens, JJ., concur.

MORGAN, C. J., Dissenting.—This is a suit to quiet title, commenced by respondent against Canyon County, Idaho, its treasurer and recorder, City of Nampa, its treasurer, Nampa & Meridian Irrigation District, its directors and treasurer and others. From a decree quieting respondent's title the city and irrigation district and their said officials have appealed.

It is alleged in the amended complaint that appellant is the owner of two tracts of land in Nampa, Canyon County, hereinafter referred to as blocks 13 and 16; that the city council enacted an ordinance, which was approved October 20, 1919, creating local sewerage improvement district No. 22, wherein said blocks were included; that the ordinance provided for the levy of assessments to raise money to pay for improvements therein mentioned, which assessments were confirmed by an ordinance, enacted and approved December 6, 1920, providing for payment of the amounts assessed against the lands in the district in installments; that the council also enacted an ordinance, approved May 4, 1920, whereby it created local sewerage improvement district No. 26 wherein said blocks were included; that assessments were made pursuant to the provisions of said ordinance on the lands embraced within that district and, October 1, 1920, an ordinance was enacted and approved, confirming the assessment roll, whereby such assessments became a charge on the land, payable in installments; that to and including 1926 the annual installments for district No. 22 and district No. 26 were certified to the treasurer of Canyon County for collection and the records show the following to be unpaid: block 16, district No. 22, for 1926—$49.32; district No. 26, for 1926—$126.00; block 13, district No. 22, for 1924—$54.48, for 1925—$51.96, for 1926—$49.32; district No. 26, for 1924—$138.96, for 1925—$132.48, for 1926—$126.00; that subsequent to 1926 installments of assessments have been carried on the rolls of the treasurer of Nampa, which rolls show the following amounts were assessed against each of the blocks: district No. 22, for 1927—$46.92, for 1928—$44.40, for 1929—$41.88, for 1930—$38.76; district No. 26, for 1927—$119.52, for 1928—$112.92, for 1929—$106.44, for

1930—$99.24; together with interest and penalties on said assessments and costs of issuing certificates of delinquency, and that the assessments became liens on the property prior to the date of acquisition thereof by respondent. It is also alleged that block 16 was deeded to Canyon County January 5, 1931, for taxes levied against it for 1926 and block 13 was deeded to it January 4, 1930, for taxes levied against it for 1925; that March 27, 1935, the county sold and deeded block 16 to appellant and February 28, 1934, it sold and deeded block 13 to him. The city levied, or attempted to levy, sprinkling taxes against the tracts in question but it is conceded these taxes were not liens thereon, because of defects in procedure.

It is further alleged in the amended complaint that Nampa & Meridian Irrigation District claims an interest in blocks 13 and 16 by reason of deeds issued to it for irrigation district assessments levied by it, prior to the date of acquisition of title by respondent from Canyon County.

The city and its treasurer demurred to the amended complaint. The demurrer was overruled and they refused to further plead. The irrigation district, its directors and treasurer, answered and cross-complained, and a demurrer to the cross-complaint was sustained.

The case was, by respondent and the district and its said officials, submitted to the court on stipulated facts from which it appears that blocks 13 and 16 are within the boundaries of the district; that since prior to 1920, the district has been the owner of the Ridenbaugh Canal System, and the right to the water diverted thereby, and of a water right purchased from the Boise Project of the United States Reclamation Service with an interest in said project works sufficient for the carriage of the water represented by the right, to lands within the district to which it has been apportioned for the irrigation thereof; that prior to 1920 the district apportioned 1.125 miner's inches of water from its Ridenbaugh Canal water right and 1.352 acre feet of water from its Boise Project water right to block 13 and duly assessed costs thereof to said tract, on the assessment of benefits of the district, amounting to $37.94 for the Ridenbaugh right, and $119.65 for the Boise Project right; that prior to

1928 it had collected $11.28 on account of the benefits assessed for the Ridenbaugh right, leaving a balance unpaid of $26.66, and had collected $32.28 on account of Boise Project right, leaving a balance unpaid of $81.25; that the unpaid balances of said assessments are evidenced by outstanding bonds of the district issued on account of the Ridenbaugh water right and by a contract entered into between the district and the United States for the purchase of the right to water from Boise Project; that prior to 1920 the district apportioned water rights from Boise Project to block 16, and assessed the cost thereof, to wit, $210.00, against the lots therein; that prior to 1928 it had collected $71.40 thereof, leaving a balance unpaid of $138.60; that the unpaid portion of that assessment is evidenced by the contract entered into between the district and the United States for the purchase of the right to water from Boise Project; that in 1926, and every year thereafter, to and including 1935, the district has assessed blocks 13 and 16 on account of construction charges, being the balance unpaid on the purchase price of said water rights, and on account of operation and maintenance charges incurred in distributing the water to the land, and in maintaining the canal system; that the assessment against block 16, for 1926, was not paid and, July 23, 1930, a deed was issued to the district for said tract; that the assessment for 1928 against block 13 was not paid and a deed therefor was issued to the district June 1, 1932; that the following assessments have been levied by the district against block 16: 1926—$72.30, 1927—$76.10, 1928—$71.80, 1929—$67.50, 1930—$63.20, 1931—$57.40, 1932—$53.20, 1933—$31.80 and 1934—$20.10; that it has levied the following assessments against block 13: 1928—$67.80, 1929—$61.15, 1930—$57.35, 1931—$50.15, 1932—$46.45, 1933—$33.55 and 1934—$19.65; that in addition to these assessments is interest accumulated thereon and that no part of said indebtedness has been paid, nor has any tender to the district been made thereof; also that the execution of the deeds to the district, and all proceedings leading thereto, were in accordance with the laws of Idaho relating to the execution of deeds to irrigation districts.

It was further stipulated that state and county taxes were levied against block 16 for 1926, and for subsequent years,

which were not paid, and that January 5, 1931 it was deeded to Canyon County for taxes for 1926; that state and county taxes levied against block 13 for 1925, and subsequent years, were not paid and that January 4, 1930, it was deeded to Canyon County for taxes levied against it for 1925; that the proceedings levying taxes against said tracts, and all subsequent proceedings leading to the execution of the deeds, were in conformity to the laws of Idaho relating to levying taxes and conveying to the county property whereon they are not paid. It further appears from the stipulation that, pursuant to the statutes of Idaho relating to the sale of real property acquired by a county for taxes, Canyon County, March 27, 1935, sold and conveyed block 16 to respondent herein and, February 28, 1934, it sold and conveyed block 13 to him; that he has not parted with the title he thus acquired and now claims to own the property by reason of said conveyance.

It was decreed that respondent was the owner of the property; that his title thereto be quieted against appellants; that the city treasurer be, and she was, directed to cancel, on the records of her office, all city assessments and certificates of delinquency against it; that the county treasurer be, and she was, directed to cancel, on the rolls of her office, all assessments against the property certified to her by the city; that the treasurer of the irrigation district be, and she was, directed to cancel on the rolls of her office all irrigation district assessments levied against block 16 prior to March 27, 1935, and all such assessments levied against block 13 prior to February 28, 1934, and that the county recorder be, and he was, directed to cancel on the records of his office all such assessments certified by the district, against block 16, prior to March 27, 1935, and against block 13, prior to February 28, 1934.

The question before us is: Did the county's deeds convey the property to respondent free from the assessments levied by the city for the benefit of the sewer districts and those levied by the irrigation district?

The county's titles, which it acquired to block 13, for taxes levied for 1925, by deed executed January 4, 1930, and to block 16, for taxes levied for 1926, by deed executed Janu-

ary 5, 1931, were limited by Compiled Statutes, 1919, sec. 3263, enacted in 1917 and amended in 1921 (now I. C. A., sec. 61–1032), which was the law in force when the taxes were levied and when the deeds were executed. It is as follows:

"The deed conveys to the grantee the absolute title to the land described therein, free of all encumbrances except mortgages of record to the holders of which notice has not been sent as provided in section 61–1027 and except any lien for taxes which may have attached subsequently to the assessment."

The meaning of that section is clear. Titles to these tracts did not go to the county freed from the liens of taxes attaching subsequent to the levy of the assessments, for failure to pay which they were deeded to it. (*State v. Stuart,* 41 Ida. 126, 238 Pac. 305; *Larson v. Gilderoy,* 45 Ida. 764, 267 Pac. 234.)

The county could convey no greater title than it had. It is said in *Larson v. Gilderoy,* above cited:

"Washington county acquired these particular lands by reason of the failure of the then owner or owners to pay taxes thereon for 1918. Deeds were issued by the tax collector and delivered to Washington county in January and April, 1922. The lands were regularly assessed for state, county and municipal taxes for the years 1919, 1920 and 1921 while still standing in the names of the same owners. Taxes for these latter years have not been paid. They are outstanding liens, and were such at the time appellants received their deeds from Washington county, and the county conveyed only the title it received."

See, also, *Hunt v. City of St. Maries,* 44 Ida. 700, 260 Pac. 155, and *Bauer v. Cassia County,* 47 Ida. 680, 277 Pac. 1111.

While special improvement district assessments are not taxes in the sense in which that word is usually employed in the constitution and statutes of Idaho, they have been held to be, and are, taxes in the sense in which it is used in C. S., sec. 3263. In *Heffner v. Ketchen,* 50 Ida. 435, 440, 296 Pac. 768, 770, it is said:

"Drainage district assessments 'do not constitute a tax within the purview of the constitution' (Const., art. 7, sec.

5; *Elliott v. McCrea,* 23 Ida. 524, 529, 130 Pac. 785, 786), nor are they 'taxes' within the meaning of that term as is usually employed in our Constitution and statutes, although laid under a taxing power, and do not fall within the restraints imposed by the Constitution. However, they are special assessments for local benefits and are taxes in a general sense. (*Booth* v. *Clark,* 42 Ida. 284, 290, 244 Pac. 1099.)

"Under the tax deed to Ada County, dated January 12, 1929, title to the property now owned by the Heffners vested in the county free of all incumbrances, except mortgages of record to the holders of which notice has not been sent as provided in C. S., sec. 3258, except the lien of state, county and municipal taxes (*State v. Stuart,* 41 Ida. 126, 238 Pac. 305; *Larson v. Gilderoy,* 45 Ida. 764, 267 Pac. 234), and liens for local improvement assessments (*Hunt v. St. Maries,* 44 Ida. 700, 260 Pac. 155) assessed for the years subsequent to the assessment of taxes and assessments on account of the delinquency of which the property was sold; that is, since the year 1924. (C. S., sec. 3263, as amended by Sess. Laws 1921, chap. 232, p. 521, *supra.*) It logically follows that liens for school district taxes and drainage district assessments are 'taxes' coming within the exception, and we so hold."

The property involved in the *Heffner-Ketchen* case was deeded to the county January 12, 1929, for taxes which became delinquent in December, 1924. This court, in that case, held the sale of the property to Heffner's grantor, and the title thereby conveyed, were governed by C. S., sec. 3423, as amended by Sess. Laws 1929, chap. 216, which contained a provision, originally enacted in 1927 and appearing in the session laws of that year in chap. 159, page 213, as follows:

"Any such sale made by the board of county commissioners of property acquired through tax deed shall, subject to the provisions of this section, vest in the purchaser all of the right, title and interest of the county in the property so sold, including all delinquent taxes which have become a lien on the property since the date of the tax sale certificate upon which any tax deed has been issued, . . . . "

The court, in that case, held the purchaser from the county took title to the property free from "drainage district assessments attaching since the first Monday in January, 1925, upon entry of delinquency, which had the force and effect of a sale in trust for the county, under C. S., sec. 3241."

That holding is erroneous and, apparently, has led the learned trial judge in this case into error. In 61 C. J. 1293, sec. 1799, the rule is thus stated:

"Questions concerning the validity and effect of a tax sale as a transfer of title, or in so far as such sale affects the rights of the purchaser, are to be determined by the law in force at the time the sale was made, which law, indeed, constitutes a contract between the state and the purchaser, the terms of which cannot be impaired by subsequent legislation. Statutes affecting the title or rights of a tax-sale purchaser are not retroactive. The purchaser's rights, under the tax sale certificate, are to be determined specifically by the law in force at the time the certificate was acquired."

By the laws of Idaho the county becomes the purchaser of real property on which taxes are delinquent and, as stated in *Heffner v. Ketchen, supra,* entry of delinquency has the force and effect of a sale in trust for it. So the rule above quoted from Corpus Juris and followed in *Larson v. Gilderoy, Hunt v. St. Maries* and *Bauer v. Cassia County,* above cited, applies here, with this modification: C. S., sec. 3263, makes the law in force at the date of the assessment of the taxes, failure to pay which resulted in the issuance of the deeds, controlling rather than the law in force at the time the sale was made, or at the time the certificate was issued, which difference is immaterial in this case.

As heretofore pointed out, Canyon County took title limited by C. S., sec. 3263, to the effect that it was subject to "any lien for taxes which may have attached subsequently to the assessment." That lien was not extinguished by the legislative act of 1927, declaring what title should vest in the purchaser, from the county, of property acquired by it for delinquent taxes. To construe the 1927 act otherwise would make it retroactive, so as to empower the county to convey a greater title than it possessed, and would make it violative of the Constitution of Idaho, art. 1, sec. 16, and the

Constitution of the United States, art. 1, sec. 10, which prohibit the enactment of laws impairing the obligations of contracts.

The unpaid assessments levied by Nampa & Meridian Irrigation District, and by the City of Nampa (other than for sprinkling) which attached since the assessments resulting in the issuance of deeds of conveyance to the county, created valid liens against the property which were not extinguished by the county's deeds to respondent.

Justice Holden concurs in this dissenting opinion.