(No. 6798.   October 22, 1940.)

FRANKLIN GIRARD, Respondent, v. BYRON DEFEN-
BACH, Tax Commissioner of the State of Idaho, Appel-
lant.

[106 Pac. (2d) 1010.]

Z. Reed Millar, for Appellant.

Maurice H. Greene and George Donart, for Respondent.

PER CURIAM.—October 18, 1939, respondent, Franklin Girard, filed complaint in the district court against appellant, Byron Defenbach, Tax Commissioner of the State of Idaho, under the declaratory judgment law, alleging he was elected Secretary of State November 8, 1932, for a term of two years, reelected November 6, 1934, for a term of two years, and for his services was paid $4,000 per annum and alleging the terms of sections 61–2420, I. C. A., and 61–2410, I. C. A., as amended by chapter 159, 1933 Session Laws and as further amended by chapter 30, 1935 Session Laws, First Extraordinary Session; that during whole of the calendar year of 1936 respondent was married and living with his wife and that their total income, other than his state salary, did not exceed $1,500 and that their total gross income other than salary received from the state of Idaho was less than $5,000, that respondent did not file an income tax return; that the salary of Secretary of State was not taxable at the time of the enactment of chapter 24, Title 61, I. C. A.; that the legislature did not levy a tax upon the salary of the Secretary of State, and that respondent was not required to make and file an income tax return for the year 1936, or to pay a tax thereon. It was further alleged the then tax commissioner, during 1933 adopted regulation No. 18, which excepted salaries of elective officers of the state; that notwithstanding such regulation and the provisions of the Income Tax Law, appellant notified various state officers they were required to file a return and pay a tax on their salaries for 1936 and that appellant construed the Income Tax Law to levy a tax upon the salary of the Secretary of State for the year 1936. A declaratory judgment pertaining thereto was prayed.

Appellant's answer in effect is an admission of the allegations of fact but denied that regulation No. 18 was a legal and proper regulation, and alleged it was contrary to law. Appellant prayed the Income Tax Law be interpreted to require respondent to report all salaries and wages received and to pay the tax thereon.

The matter was tried on such issues, no evidence being introduced, the trial court concluding the facts alleged in the complaint were admitted. Findings of fact and conclusions of law and judgment were entered against appellant and this appeal was then prosecuted.

The sole question presented is one of interpretation of law, namely: Whether the Secretary of State, a constitutional officer (art. 4, sec. 1, Const.), is required to file a return and pay a tax, with relation to his salary as Secretary of State, under the provisions of the Income Tax Law of the State of Idaho.

At the outset it may be said that the members of this court, as well as all judges and officials who come within the classification of constitutional officers, are directly and individually interested in the question presented, and we regret that its solution falls to us. However, as stated in a similar situation by the Supreme Court of the United States, we cannot renounce or decline jurisdiction. In *Evans v. Gore*, 253 U. S. 245, 40 Sup. Ct. 550, 551, 64 L. ed. 887, 11 A. L. R. 519, the Supreme Court of the United States said:

"Because of the individual relation of the members of this court to the question . . . . stated, we cannot but regret that its solution falls to us; . . . . But jurisdiction of the present case cannot be declined or renounced."

*Poorman v. State Board*, 99 Mont. 543, 45 Pac. (2d) 307; *Gordy v. Dennis*, 176 Md. 106, 5 Atl. (2d) 69.

Article 5, section 27 of the state Constitution, provides:

"The legislature may by law diminish or increase the compensation of any or all of the following officers, to wit: Governor, lieutenant governor, secretary of state, state auditor, state treasurer, attorney general, superintendent of public instruction, commissioner of immigration and labor, justices of the Supreme Court, and judges of the district courts and district attorneys; but no diminution or increase shall

affect the compensation of the officer then in office during his term, provided, however, that the legislature may provide for the payment of actual and necessary expenses of the governor, secretary of state, attorney general, and superintendent of public instruction incurred while in performance of official duty."

Analogous in part at least to the foregoing section, and with reference to certain officers listed, is article 3, section 1 of the federal Constitution, which has been the subject of interpretation. This subject provides:

"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the congress may from time to time ordain and establish. The judges, both of the Supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office."

The Income Tax Law was adopted by the legislature in 1931 and is found in chapter 2 of the Session Laws, Extraordinary Session of 1931, now chapter 24, Title 61, I. C. A. The definition of gross income as defined by section 17, subdivision A of the law evidently was adopted *verbatim,* with certain notable exceptions, from section 213 of the Federal Income Tax Act of February 24, 1919, 40 Stat. 1065 (1919 Supp. Fed. Stats. Ann., 2d. ed., p. 97), which reads as follows:

"Sec. 213. Gross income defined. That for the purposes of this title (except as otherwise provided in section 233) the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service (*including in the case of the President of the United States, the judges of the Supreme and inferior courts of the United States, and all other officers and employees, whether elected or appointed, of the United States, Alaska, Hawaii, or any political subdivision thereof, or the District of Columbia, the compensation received as such*), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property whether real or personal, growing out of the ownership or use of or

interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period.'' (Emphasis inserted.)

The analogous section of the state law, section 61–2412, as amended, provides:

''Section 61–2412. GROSS INCOME DEFINED.—For the purpose of this chapter, except as otherwise provided in Section 61–2428:

''a. The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever, including all interest received from federal, state, municipal or other bonds. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless other methods of accounting permitted under subdivision b of Section 61–2411, any such amounts are to be properly accounted for as of a different period.''

Section 77 of the State Income Tax Law (Sess. Laws 1931 (Extra Sess.) chap. 2, sec. 77) (now sec. 61–2477, I. C. A.) reads as follows:

''*For the purpose of determining gross and* net *income, depletion, depreciation and obsolescence, in all cases not expressly provided for in this chapter, the provisions of the most recent act of the congress of the United States, commonly known as the Federal Income Tax Act, and the rules, regulations and decisions thereunder, in so far as same are applicable and pertinent and not repugnant to or inconsis-*

*tent with the express provisions of this chapter, shall be the rule of decision in all courts of this state and by the tax commissioner.''* (Emphasis inserted.)

An analysis of the sections of the state and the federal income tax acts defining gross income discloses they are identical with one obvious and significant exception, namely: The italicized portion of section 213 of the Federal Income Tax Act, heretofore quoted, which is that part of section 213 specifically providing that salaries of the President, judges of the supreme and inferior courts and other officers of the federal Government are to be included in gross income is entirely omitted from the corresponding section (sec. 61–2412, I. C. A.) of the state act.

That the 1931 Extraordinary Session of the legislature derived the definition of ''gross income'' from the Federal Income Tax Act and likewise adopted the interpretation placed upon it by rules, regulations and decisions with reference thereto is quite conclusively indicated by section 77 of the state act (section 61–2477, I. C. A.) providing that the provisions of the Federal Income Tax Act and the rules, regulations and decisions thereunder ''shall be the rule of decision in all courts of this state and by the tax commissioner.''

Clearly the legislature intentionally omitted the italicized clause of section 213 of the federal act from the provisions of section 77 of the state act defining gross income. Had the legislature intended to tax the salaries of the officers mentioned in our Constitution (art. 5, sec. 27, above quoted) as congress intended to tax the salaries of the President and of federal judges, it would have unquestionably provided for such taxation, as did congress, by naming the office, the salary of the occupant of which was to be taxed. The omission of a clause corresponding to that in the federal act which provides for the taxation of the salaries of the President and of federal judges, is convincing evidence of legislative intent to not tax the salaries of the officers mentioned in article 5, section 27 of the Constitution. This court has announced the rule that when a statute is so adopted from another jurisdiction with a provision omitted leads to the conclusion that it was not intended that such omitted provision should prevail in this jurisdiction. The uniform rule

of construction in such cases is stated in *Hendrix v. Gold Ridge Mines, Inc.,* 56 Ida. 326, at 337, 54 Pac. (2d) 254, as follows:

"It is significant that our statute, which was adopted in 1893 (1893 Sess. Laws, p. 54, sec. 12), and was evidently copied from the California lien statute, omitted the provision for allowance of attorney's fees in the *supreme* court. The fact that this provision was omitted from our statute leads to the conclusion that it was not intended that such practice should prevail here."

The general rule with relation to the construction of a statute adopted from another jurisdiction, including a federal statute adopted by a state, is that it will be presumed to have been adopted with the construction placed upon it by the courts of that state or country before its adoption. (59 C. J. 1065; *Griffiths v. Montandon,* 4 Ida. 377, 39 Pac. 548; *Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246; *Merchants' Protective Assn. v. Jacobsen,* 22 Ida. 636, 127 Pac. 315; *Gallafent v. Tucker,* 48 Ida. 240, 281 Pac. 375; *Mochel v. Cleveland,* 51 Ida. 468, 5 Pac. (2d) 549; *Hanson v. Rogers,* 54 Ida. 360, 32 Pac. (2d) 126.)

In 1931 when the extraordinary session of our legislature adopted the Income Tax Law, the definition of gross income contained in the Federal Income Tax Act, with reference to taxation of salaries of federal judges had been twice interpreted by the Supreme Court of the United States, in *Evans v. Gore* (June 1, 1920), 253 U. S. 245, 40 Sup. Ct. 550, 64 L. ed. 887, 11 A. L. R. 519, and *Miles v. Graham* (March, 1925), 268 U. S. 501, 45 Sup. Ct. 601, 69 L. ed. 1067, and not only does the rule of construction of an adopted statute appear applicable, but in addition the legislature by section 77 of the act specifically provided that for the purpose of determining "gross income" the decisions under the Federal Income Tax Act should be the rules of decisions in all courts of this state and by the tax commissioner. Whether such provision is of binding force need not be determined; however it clearly discloses the intent of the legislature to adopt the interpretation previously placed upon the adopted statute by the Supreme Court of the United States, to the effect that the salaries of certain officials were

not considered as "gross income" within the statute. In *Evans v. Gore, supra,* the Supreme Court considered the question of the taxation of the salary of a federal judge appointed prior to the enactment of the 1919 Federal Income Tax Act, determining that in so far as it applied to the salary of a federal judge appointed prior to its enactment such statute was unconstitutional under the court's interpretation of section 1, article 3 of the federal Constitution, heretofore quoted. In *Miles v. Graham, supra,* the right to tax the salary of a federal judge appointed subsequent to the 1919 Federal Income Tax Act was in question, the Supreme Court holding that the entire provision relative to taxation of salaries of the judicial officers was unconstitutional. It thus appears that when this act was passed by the 1931 Extraordinary Session of the legislature the Supreme Court of the United States had twice interpreted the federal statute from which the state statute was adopted as being unconstitutional in so far as it applied to salaries of officers whose salaries by the terms of the Constitution could not be diminished during their term of office. The 1931 Extraordinary Session of the legislature evidenced its intent to eliminate from the provisions of the state law those state officers provided by the Constitution to be free from diminution of salary during their term of office by omitting from the state act that portion of the federal act attempting to subject like officers to taxation. Further following the expressed intention of the legislature the tax commissioner of the state of Idaho immediately after the effective date of the Income Tax Law of 1931, promulgated rules and regulations which evidence the same legislative intent, the rules and regulations providing for the taxation of:

"Income received by an officer or employee of the State of Idaho, whether elected or appointed, *except salary of* the Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, Superintendent of Public Instruction, Justices of the Supreme Court, District Judges and District Attorneys."

It is quite apparent that the state legislature in 1931 did not intend, but to the contrary disclosed an intention not to tax the salaries of officers enumerated in section 27 of article 5 of the state Constitution, *supra.*

It is logical to assume that this action is the outgrowth of a decision of the United States Supreme Court overruling those decisions announced in *Evans v. Gore* and *Miles v. Graham, supra,* which decision, *O'Malley v. Woodrough,* 307 U. S. 277, 59 Sup. Ct. 838, 83 L. ed. 1289, 122 A. L. R. 1379, 1392, suggesting that there is no constitutional inhibition against including the salary of a federal judge in income taxation, and that such tax does not constitute diminution of salary as contemplated by the Constitution, is not controlling for the obvious reason that it has no bearing upon the legislative intention of the 1931 extraordinary session of the Idaho legislature, nor for that matter any income tax act of the state of Idaho, having been rendered subsequent thereto. Furthermore, the above decision, as expressly stated therein, did not decide the status of officers *in office prior to the amendment of the statute,* hence has no bearing on the case herein at all.

Since the rendition of the opinion in *O'Malley v. Woodrough, supra,* the decision of the Supreme Court of Oregon in *Meredith v. Tax Commrs.,* (Or.) 96 Pac. (2d) 1082, 125 A. L. R. 1417, has been rendered and supports the position herein taken with reference to the consideration to be given the existing decisions of the Supreme Court of the United States in determining legislative intent, reciting:

"The tax commission, however, urges that the overruling by the United States supreme court of its prior decisions, in *Graves v. New York ex rel. O'Keefe, supra* [306 U. S. 466, 59 Sup. Ct. 595, 83 L. ed. 927, 120 A. L. R. 1466], and *State Tax Commission of Utah v. Van Cott,* 306 U. S. 511, 59 Sup. Ct. 605, 83 L. ed. 950, and the holding of that court in those cases that the salaries, wages and compensation of officers and employees of the United States were subject to the income tax laws of the several states, result in upholding the legality of the tax levied by the commission against the plaintiff herein for the year 1935.

. . . .

"To accede to the contention of the tax commission that the holding in *Graves v. New York ex rel. O'Keefe, supra,* and *State Tax Commission of Utah v. Van Cott, supra,* reversing earlier decisions of long standing on the same subject, had a

retrospective effect and subjected to state taxation the plaintiff's salary for the year 1935, *is to attribute to the legislature in its enactment of subdivision 2 supra, an intention which obviously it did not have.* Such a construction of the statute in question would work an injustice to federal employes who had complied with the law as then interpreted by the supreme court of the United States, by imposing upon them the duty of paying taxes for past years during which they were specifically exempted from such payment."
And it is further said therein:

"We are here confronted with the necessity of determining what the legislature intended when it excluded from 'gross income' the salaries, wages and other compensation of employes of the United States 'which are or shall be exempt from state taxation by federal law.' To say that the legislature had in mind only such salaries, wages and other compensation as were expressly exempted from state taxation by some provision of the United States Constitution or statutes, would be to construe its language too narrowly. The legislature is presumed to have had in mind the decisions of the supreme court of the United States holding that the constitution of the United States impliedly prohibited the states from taxing the instrumentalities of the federal government or the salaries, wages and other compensation of the officers and employes of the United States or governmental instrumentalities created by acts of Congress. It is therefore apparent that the legislature intended in enacting the sections of the income tax law under consideration, to exempt from taxation by the state the salary of Mrs. Meredith as an employee of Home Owners' Loan Corporation, at least while the law as then declared by the decisions of the United States Supreme Court should remain unchanged."

Within its province the legislature of 1931 Extraordinary Session passed an income tax act clearly disclosing an intention to exclude from its definition of "gross income" the salary of the Secretary of State and since such time the legislature has expressed no contrary intention. The judgment of the lower court should therefore be and is hereby affirmed.