(No. 6802. December 12, 1940.)

J. G. BRECKENRIDGE, SEYMOUR R. NELSON and JOHN P. TATE, Commissioners of Drainage District No. 3 of Ada County, Idaho, and MARGARET GILBERT, Treasurer of Ada County, Idaho, Respondents and Cross-Appellants, v. A. A. JOHNSTON, Appellant and Cross-Respondent.

[108 Pac. (2d) 833.]

Rehearing denied January 13, 1941.

Luther W. Tennyson and W. A. Johnston, for Appellant and Cross-respondent.

Elam & Burke, for Respondents and Cross-appellants.

HOLDEN, J.—In 1913 the legislature enacted a complete drainage district code (1913 Sess. Laws, p. 58, now chap. 25, Tit. 41, secs. 41–2501 to 41–2564, inclusive, I. C. A.), providing "for the establishment of drainage districts, and the construction and maintenance of a system of drainage," and for an assessment of benefits against each tract of land within the district, issuance of bonds,. levy of assessments to pay the same and interest coupons. Some ten years later, to wit, March 2, 1923, Drainage District No. 3 of Ada County was regularly organized under the provisions of this drainage district code. Since its organization the district has been entitled to exercise all of the powers and privileges conferred upon drainage districts. For the purpose of paying costs, etc., and construction of the drainage system, an original assessment was made and approved in the sum of $291,337.29. Bonds were issued and sold amounting to $68,000, each in the amount of $500 and bearing interest at 6% per annum, interest payable semi-annually. The district obligated itself to pay the principal sum of each bond on a definite date (specified in the bond) together

"with interest hereon from the date hereof at the rate of six per cent (6%) per annum, payable semi-annually on the first days of February and August upon presentation and surrender of the annexed interest coupons as they respectfully [clearly a typographical error made in printing the bond] become due."

It further provided that:

. "This bond is subject to redemption in numerical order by the Treasurer of Ada County whenever said Treasurer has on hand $5,000.00 of the special fund for the payment of said bonds after said bonds shall have run for a period of three years, upon the giving of notice thereof in the manner provided by law,"

in conformity with the terms of Session Laws 1913, chapter 16, section 29, page 75, now section 41-2557, I. C. A. The bond concludes with the following paragraph:

"For the faithful performance of all covenants, recitals and stipulations herein contained, for the proper application of the proceeds of the taxes heretofore or hereafter levied and for the faithful performance in apt time and manner of each official act required and necessary to provide for the prompt payment of interest and principal of this bond after the same matures the full faith, credit and resources of said Drainage District are hereby irrevocably pledged."

Bonds 1 to 81, inclusive, have been paid. There was then outstanding, past due and unpaid $27,000 represented by bonds numbered 82 to 136, inclusive; all interest coupons up to and including bond numbered 94 have been paid. Appellant Johnston purchased and became the owner of bonds 23 to 42, 49 to 68, 74 to 94, and 100 to 109, all-inclusive.

Interest was paid on certain bonds after maturity of the principal thereof, the last payment of after-maturity interest being made in August, 1937, after which the drainage district refused to pay further after-maturity interest. Payments of after-maturity interest, extending from February, 1932, to August 2, 1937, amounting to the sum of $2,819.32, were made, without protest, from levies against the lands of the district. No assessment, however, was ever levied for the express purpose of paying after-maturity interest.

The prayer of the amended complaint was for a declaratory judgment on the first cause of action to determine whether the bonds of the district drew interest *after maturity*. On the second cause of action, a declaratory judgment was sought to determine whether the payments of *after-maturity* interest received by Johnston could be offset and credited against the payment of principal of the bonds now owned and held by him.

The case was tried to the court and judgment was entered on the first cause of action, that appellant Johnston is not entitled to receive or collect interest on the principal of the bonds owned by him after the date of their maturity. On the second cause of action, it was adjudged and decreed that appellant is not legally liable for repayments of interest on

matured bonds of the district voluntarily made to him by the district; and that the payments of such interest cannot be legally offset against payment of principal of the bonds owned by him. From this judgment two appeals have been taken: one by Johnston from the judgment entered on the first cause of action; the other by J. G. Breckenridge et al., as commissioners of Drainage District No. 3, and Margaret Gilbert, as county treasurer, from the judgment entered on the second cause of action.

The first question to be determined on this appeal is: May interest be collected on past due drainage district bonds after all attached interest coupons have been paid?

At the outset it must be conceded interest cannot be collected on past due drainage district bonds (after all attached interest coupons have been paid), unless the law provides for the payment of interest. Whether interest may be collected depends upon the construction of sections 41–2552, 41–2554, 41–2556, 41–2557, 41–2558 and 41–2562, I. C. A., in force at the time the bonds in question were issued and sold. These sections provide:

That bonds may be issued and sold to pay the costs of construction of a ''system of drainage''; that the bonds shall be ''payable at a time not less than five years nor longer than twenty years from the date thereof'' (sec. 41–2552, *supra*); that they must be ''numbered from one upward, consecutively, and be in denominations of not less than $100 nor more than $1000. They shall bear the date of issue, shall be made payable to the bearer and bear interest at a rate not exceeding seven per cent per annum, payable semiannually, with coupons attached for each interest payment''; ''the board of directors shall fix the maturities of said bonds, not exceeding twenty years from the date of their issuance and an amortization period which shall not be less than three-fourths of the maximum maturity. During the first fourth of the period covered by the last maturity, provision may be made, in the discretion of the board, for the payment of interest only. Maturities shall be so arranged that during at least the latter three-fourths of the period covered by the last maturity the principal shall be amortized by payments thereof in annual or semi-annual instalments so arranged

as to maturities that the combined principal and interest payments during the amortization period shall be approximately the same each year" (sec. 41–2554, *supra*); that a district "at least five years before" the maturity of its bonds shall annually "levy an assessment sufficient to liquidate said bonds at maturity"; the assessment so levied must be "kept as a separate fund for the sole purpose of liquidating said bonds" (sec. 41–2556, *supra*); the duty is imposed on the treasurer of the county "in which there may be a district issuing bonds under the provisions of this chapter whenever he has upon hand $5000 of the special fund for the payment of said bonds, and when said bonds shall have run for a period of three years, to advertise in the newspaper doing the county printing, for the presentation to him for payment of as many of the bonds issued under the provisions of this chapter as he is able to pay with the funds in his hands, to be paid in numerical order of said bonds, beginning with the bond number one, until all of said bonds are paid: provided, that thirty days after the first publication of said notice of the treasurer calling in any of said bonds, said bonds shall cease to bear interest" (sec. 41–2557, *supra*); that "it shall be the duty of such drainage commissioners annually to levy an assessment sufficient for the payment of the coupons hereinbefore mentioned as they fall due. Said coupons shall be considered for all purposes as warrants drawn upon the funds of the district issuing bonds under the provisions of this chapter, and, when presented to the county treasurer, and no funds are in the treasury to pay said coupons, it shall be his duty to indorse said coupons as presented for payment in the same manner as other warrants upon the funds of said district are indorsed, and thereafter said coupons shall bear interest at the same rate as other warrants so presented and unpaid" (sec. 41–2558, *supra*); that "the commissioners may also levy assessments for any expense necessarily incurred by them for [italics ours] construction, maintenance, repair, or any extraordinary reasons, and also may add to said assessment sufficient to pay any deficiency occurring the preceding year or any other unpaid warrant indebtedness, if any, or to pay any outstanding warrants" (sec. 41–2562, *supra*).

■ The only method by which a drainage district could obtain money with which to pay interest on past due bonds would be by levying assessments, and, of course, it could not levy assessments for that purpose unless authorized to do so by law. It appears a drainage district may (in addition to levying an assessment of benefits and an assessment to complete the drainage system in the event the amount originally levied proves insufficient) levy assessments for the following purposes: an assessment, annually, to pay interest coupons attached to construction bonds "as they fall due"; *an assessment, annually, sufficient to liquidate construction bonds at maturity, which assessments must be levied commencing at least five years before the bonds become due;* assessments to pay "outstanding warrants"; assessments for "any expense necessarily incurred by them [the commissioners] for construction, maintenance, repair, or any extraordinary reasons, and also may add to said assessment sufficient to pay any deficiency occurring the preceding year or any other unpaid warrant indebtedness, if any."

■ That a drainage district cannot levy an assessment to pay interest on past due bonds, unless the law authorizes it to do so, seems to be conceded in that it is contended "drainage districts possess ample power to make levies for after-maturity interest and extraordinary expenses of every necessary kind." In other words, as we understand appellant Johnston, he contends drainage districts have power under section 41–2562, *supra,* to levy assessments to pay "extraordinary expenses," and that that confers "ample power to make levies for after-maturity interest." We cannot accept that interpretation.

What the legislature intended by the phrase "any extraordinary reasons," to illustrate, was simply this: To authorize drainage districts to levy an assessment to pay the expense of repairing damage done to a drainage system by some unusual occurrence, for instance, a destructive flood—a flood being an *extraordinary,* and not a *common,* occurrence, the *reason* for levying an assessment to make repairs would likewise be *extraordinary,* within the meaning of the statute (sec. 41–2562, *supra*). The power to levy such an assessment assures the continued operation and maintenance of a drain-

age system, but it does not authorize the levying of an assessment to pay interest on past due bonds after all interest coupons have been paid.

■ It is further contended section 41–2557, *supra,* also authorizes the levy of assessments to pay interest on past due bonds. In substance that section provides when a county treasurer has drainage district money in his hands to the amount of $5,000 of the special funds for the payment of said bonds, and, further, when the bonds of a district have been running for a period of three years, the county treasurer shall call (by advertising in the newspaper doing the county printing) as many bonds as he is able to pay with the funds in his hands, and that the bonds so called shall be paid in numerical order beginning with bond number one "until all of said bonds [those called] are paid," and that "said bonds shall cease to bear interest" thirty days after the first publication of the call. It must not be forgotten in this connection that section 41–2552, *supra,* expressly provides that construction bonds shall be "payable at a time not less than five years nor longer than twenty years from the date thereof." Section 41–2557, *supra,* is clearly, then, what is generally termed an "acceleration statute," in that it authorizes a county treasurer (under the circumstances above related) to call and pay bonds *before, not after, maturity,* to *stop* the payment of interest (after thirty days), *not to authorize its payment,* either on past due bonds or any bonds other than the bonds called.

■ It is also urged the payment of interest is authorized by section 26–1904, I. C. A., providing that

"When there is no express contract in writing fixing a different rate of interest, interest is allowed . . . . on:

 1. . . . .
 2. Money after the same becomes due.
 3. . . . .
 4. . . . .
 5. . . . .
 6. . . . .
 7. . . . . "

The drainage district statute (secs. 41–2501 to 41–2564, *supra*), deals particularly and minutely with drainage dis-

tricts. Hence it is a *special* statute. Section 26-1904, *supra*, is obviously a *general* statute. It provides for the payment of interest on money after it becomes due. Under the special drainage district statute, as herein pointed out, interest cannot be collected on . past due bonds, even though such bonds evidence past due money. It is well settled in this jurisdiction that where, as here, there is a conflict between a general and special statute, the special statute prevails (*Oregon Short Line Railroad Company v. Minidoka County School District et al.,* 28 Ida. 214, 218, 153 Pac. 424; *Berg v. Carey,* 40 Ida. 278, 282, 232 Pac. 904; *State v. Jones,* 34 Ida. 83, 86, 199 Pac. 645; *State v. Taylor,* 58 Ida. 656, 667, 78 Pac. (2d) 125).

Furthermore, drainage districts are special improvement districts of limited liability—their bonds are limited, not general, obligations—the assessments authorized to be levied run "against each specific tract or parcel of land to be benefited, and the amount thereof is ascertained, determined and assessed in advance, so that every property owner can know just how much he is to pay and the bondholder can ascertain just the extent of the claim he has against each tract of land. In such case, there is no municipal liability and no municipality to be rendered liable for the payment of the indebtedness." (*Elliott v. McCrea,* 23 Ida. 524, 530, 130 Pac. 785; *Straus v. Ketchen,* 54 Ida. 56, 79, 28 Pac. (2d) 824; *McDonald v. Pritzl,* 60 Ida. 354, 359, 93 Pac. (2d) 11.) When a special improvement district levies an assessment against a particular, separate piece of property and the assessment is paid, its share or proportion of the bonded indebtedness is liquidated and such piece of property is discharged from any further liability or obligation (*Oregon Short Line Railroad Company v. Berg,* 52 Ida. 499, 502, 16 Pac. (2d) 373). A drainage district being a special improvement district, it follows that when it levies an assessment against a particular, separate piece of property and the assessment is paid, its share or proportion of the bonded indebtedness is liquidated and such piece of property is discharged from any further liability or obligation.

We conclude the power to levy assessments for the payment of drainage district bonds—interest as well as prin-

cipal—is limited (except as provided by secs. 41–2530 and 41–2531, I. C. A.) to the original assessment of benefits (secs. 41–2552, 41–2554, 41–2556, 41–2558 and 41–2562, I. C. A.).

But appellant contends these bonds continue to draw interest after maturity by reason of the uniform construction placed upon the statute, ever since its enactment, by the administrative and executive officers of the various counties and drainage districts of the state. It was alleged in the answer and stipulated at the trial:

"That by a contemporaneous construction that was placed upon the provisions of Chapter 179, Title 32 of the Compiled Statutes of the State of Idaho (now, as amended, Title 41, Chapter 25, I. C. A.), by all of the county treasurers of Idaho charged with the payment of interest and principal of said bonds, and by all other officers in the State of Idaho charged by law with the duty of carrying out the provisions of the law relative to the payment of said bonds, principal and interest, it was held to be the law that if said bonds shall not be paid at maturity they shall continue to draw interest at the rate provided for in the bonds until they are paid or until 30 days after the first notice of call made as provided by law."

We have uniformly held the construction given a statute by the executive and administrative officers of the state is entitled to great weight and will be followed unless there are cogent reasons for a change. (*State v. Omaechevviaria*, 27 Ida. 797, 803, 152 Pac. 280; *Bashore v. Adolf*, 41 Ida. 84, 91, 238 Pac. 534, 41 A. L. R. 932; *City of Pocatello v. Ross*, 51 Ida. 395, 408, 6 Pac. (2d) 481; *United Pacific Ins. Co. v. Bakes*, 57 Ida. 537, 67 Pac. (2d) 1024; *Ada County v. Bottolfsen*, 61 Ida. 363, 102 Pac. (2d) 287, 293.) In other words, and as stated in *Industrial Com. v. Brown*, 92 Ohio St. 309, 110 N. E. 774, L. R. A. 1916B, 1277, approved by this court in *City of Pocatello v. Ross, supra*, page 408, "Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative to do so."

 Where, as here, it is clear, as hereinbefore pointed out, the drainage district statute (secs. 41–2552, 41–2554, 41–2556, 41–2557, 41–2558 and 41–2562, *supra*), confers no power whatever upon drainage districts to either pay or levy assessments for the payment of after-maturity interest, then, but in harmony with the cases above cited, administrative construction must, and will be disregarded.

We come now to the second question: May after-maturity interest paid to a bondholder be recovered back or offset against the principal of his bonds?

 The functions of a drainage district are business and economic, rather than political or governmental. No question of taxation for governmental purposes or for the maintenance of governmental functions is involved. Assessments are made in proportion to the benefits received and are intended primarily to serve and advance the proprietary interests of the landowners within the district (*Elliott v. McCrea, supra,* p. 529; *Booth v. Clark,* 42 Ida. 284, 290, 244 Pac. 1099; *Straus v. Ketchen, supra,* p. 65). It is a well settled general rule (except where otherwise provided by statute), that a person cannot, either by way of set-off or counterclaim, or by direct action, recover back money which he has voluntarily paid with full knowledge of all the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed (48 C. J., sec. 280, pp. 734–736). Where a party voluntarily and without mistake of fact pays interest in excess of what is legally due, it is governed by the rule applicable to any other voluntary payment and cannot be recovered back. In accordance with this rule one who makes a voluntary payment of interest is not entitled to have the excess over the amount due applied on the principal, since to do so would be equivalent to holding that it could be recovered back (48 C. J., sec. 288, p. 739). And this court, in *Kimpton v. Studebaker Bros. Company,* 14 Ida. 552, 560, 94 Pac. 1039, 125 Am. St. 185, 14 Ann. Cas. 1126, approved the general rule that money voluntarily paid in satisfaction of an unjust or illegal demand with full knowledge of the facts, and without any mistake, fraud, duress or extortion, cannot be recovered by the payor.

In *Lundy et al. v. Pioneer Irrigation District*, 52 Ida. 683, 692, 19 Pac. (2d) 624, this court had under consideration the question as to whether property owners in an irrigation district who had not protested when paying irrigation district assessments, could recover excess payments. We held that "payment under a proper protest to the proper board or official is an essential prerequisite to entitle the party protesting to repayment of the excess (*Asp v. Canyon County*, 43 Ida. 560, 563, 256 Pac. 92; *Howell v. Board of Commrs.*, 6 Ida. 154, 53 Pac. 542)."

In the case at bar the trial court found:

"That all assessments levied for the payment of after-maturity interest were paid by the landowners within the said drainage district to the county treasurer, and by the county treasurer to the defendant [Johnston], . . . . without any protest or objection, and with full knowledge of the facts, without fraud, duress or extortion."

It follows, therefore, from what has been said, that the drainage district may not recover back or offset against the principal of appellant's bonds, the after-maturity interest paid by it to appellant.

Judgment affirmed. Costs of transcript will be equally borne by the respective parties and no other costs will be taxed.

Budge and Morgan, JJ., concur.

GIVENS, J., Concurring in Part and Dissenting in Part.— I concur except that the limiting point of payment of interest is not that the bonds are past due or that all interest coupons have been detached but is when any landowner has paid the full proportion of his land's liability for construction costs for which bonds were issued, and interest thereon for 20 years, if the bonds are not sooner retired. If the yearly levy for such construction cost assessments are not sufficient to raise within twenty years his proportion of the original assessment for construction against his land, he must pay interest on the balance thereof until he has paid the proper proportion chargeable against his land. Consequently if herein any of the money in the district's interest account

is of this nature respondent-appellant is entitled to the same. The cause should be remanded for such determination since this is a proceeding for a declaratory judgment and the record is not complete in this regard.

AILSHIE, C. J., Dissenting.—The effect of the majority opinion is recognition of the right of a municipal corporation to repudiate a legally contracted obligation. I cannot agree to such a doctrine.

When these bonds were issued by the district and purchased by appellant, it was contracted, and the purchaser had a right to believe the contract would be kept, that *interest* coupons would be paid as they fell due and that the *bonds* would be paid *at or before maturity*. (*Straus v. Ketchen*, 54 Ida. 56, 28 Pac. (2d) 824.) That much stands conceded. But it has been argued that the bondholder had his remedy by *mandamus*, to compel the levy of annual assessments to raise money to meet interest and provide a sinking fund to pay the bonds at maturity, and that, not having availed himself of such remedy, he is now without a remedy. This contention is a *non sequitur* and unsound. Because a creditor refrains from suing his debtor does not exonerate the debtor from his obligation. The most such forbearance can do is to let the statute of limitations start running.

Here we have a case, however, where the debtor *actually had the money in the treasury with which to pay ($8,863.62 in interest fund and $11,490.78 in sinking fund)* and no necessity existed for mandatory process to enforce the collection of funds for payment. The treasurer testified:

"Q. Will you state how much money you have now in the interest fund?

"A. $8,863.62.

"Q. Will you state how much money you now have in the sinking fund?

"A. $11,490.78.

"Q. How much money do you have in the fund for maintenance, repair and so on?

"A. $3,113.83.

"Q. And what is the total?

"A. $23,468.23."

It is no more onerous to pay interest on past due bonds than to pay accruing interest coupons on unmatured principal. There is as much reason and justice in declining the one as the other. It would be impugning the honesty and integrity of the borrower to say that he did not expect to pay the principal at maturity and that he might cease paying interest and thereby and thereafter have the benefit of indefinite free use of the lender's money. I rather prefer to believe that appellant and respondent dealt in good faith and that they should be held to observe the integrity of their contract.

It is not enough to say that, since no coupons were attached for interest after maturity on the principal debt, therefore no interest was contracted to be paid on past due bonds. Such circumstance should rather be taken as an evidence of the expectation of both lender and borrower, that the principal would be paid at maturity and therefore no further coupons were necessary or could ever mature after maturity of the principal debt.

Section 41–2557, I. C. A., corresponding with section 29 of the original drainage law enacted in 1913 (1913 Sess. Laws, pp. 58, 75), to which reference is above made, provides as follows:

"It shall be the duty of the treasurer of any county in which there may be a district issuing bonds under the provisions of this chapter, whenever he has upon hand $5000 of the special fund for the payment of said bonds, and when said bonds shall have run for a period of three years, to advertise in the newspaper doing the county printing, for the presentation to him for payment of as many of the bonds issued under the provisions of this chapter as he is able to pay with the funds in his hands, to be paid in numerical order of said bonds, beginning with the bond number one, until all of said bonds are paid: provided, that thirty days after the first publication of said notice of the treasurer calling in any of said bonds, said bonds shall cease to bear interest."

The *proviso* to the foregoing section of the code implies that interest shall be paid on all bonds, whether due or not, for *30 days after they are called,* if not sooner paid. If *past*

*due* bonds were not meant to draw interest, then this limitation to a 30-day period, *after call*, would be meaningless. (*Miners' & Merchants' Bank v. Herron*, 46 Ariz. 71, 47 Pac. (2d) 430; see secs. 41–2554 and 41–2557, I. C. A.)

The statute, authorizing the issuance of refunding bonds to take up an original issue, carries all the implications of interest payments on *both due and past due* outstanding bonds (secs. 41–2601 and 41–2602, I. C. A.) and may extend the maturity date of principal far beyond the original maturity and carry coupons.

It seems to me that the sound and just rule, which ought to prevail in such cases, is stated in 44 C. J., page 1236, section 4221, as follows:

"Unless a contrary intent is indicated by statute, interest-bearing or coupon bonds of a municipality, which are not paid upon demand at maturity, continue to bear interest, and the same is true of coupons which are not paid."

The statute, section 41–2558 (prior to its amendment, 1935 Sess. Laws, chap. 55, sec. 2), provides in express terms that when coupons are presented and there are no funds in the treasury to pay them, it shall be the duty of the treasurer to indorse them as presented and not paid for want of funds and "that thereafter said coupons shall bear interest at the same rate as other warrants so presented and unpaid."

There is another potent reason for holding that these bonds continue to draw interest after maturity, and that is, the uniform construction that has been placed upon the law by the administrative officers of the various counties and districts of the state ever since it was enacted. It was alleged in the answer and *stipulated as true upon the trial* as follows:

"IX. That by a contemporaneous construction that was placed upon the provisions of Chapter 179, Title 32 of the Compiled Statutes of the State of Idaho (now, as amended, Title 41, Chapter 25, I. C. A.), by all of the county treasurers of Idaho charged with the payment of interest and principal of said bonds, and by all other officers in the State of Idaho charged by law with the duty of carrying out the provisions of the law relative to the payment of said bonds, principal and interest, it was held to be the law that if said bonds

shall not be paid at maturity they shall continue to draw interest at the rate provided for in the bonds until they are paid or until 30 days after the first notice of call made as provided by law.''

It is true that such a practice of continuous construction by the administrative officers is not conclusive on the courts. On the other hand, however, in doubtful cases, it is uniformly adverted to as of great weight in construing statutes. (*United Pacific Ins. Co. v. Bakes,* 57 Ida. 537, 545, 67 Pac. (2d) 1024; *Bashore v. Adolf,* 41 Ida. 84, 91, 238 Pac. 534, 41 A. L. R. 932; 25 R. C. L., p. 1043, sec. 274; 59 C. J., sec. 609, pp. 1025, 1030, sec. 626, p. 1064; Cooley's Const. Lim., 4th ed., p. 76; *State ex rel. Anderson v. Rayner,* 60 Ida. 706, 712, 96 Pac. (2d) 244; *Eldridge v. Black Canyon Irr. Dist.,* 55 Ida. 443, 447, 43 Pac. (2d) 1052.)

The majority opinion seems to be predicated on the assumption that the law does not contemplate, and the commissioners need not provide for, the payment of the principal debt (bonds) *at maturity* and that, therefore, it must have been anticipated that some at least of the bonds would be outstanding and unpaid after maturity. This is a false assumption and, as I view it, such contingency is specifically provided against by the statute. The statute says that *annual* levies or assessments shall be made during at least the last five years of the period during which the bonds are to run, ''sufficient to liquidate said bonds at maturity.'' (Sec. 41–2556, I. C. A.) The lawmakers evidently foresaw that some property owners would not pay their assessments as they fell due and so they provided that:

''The commissioners may also levy assessments for any expense necessarily incurred by them . . . . and also may add to said assessment sufficient to pay any deficiency occurring the preceding year or any other unpaid warrant indebtedness, if any, or to pay any outstanding warrants: provided, that any assessments to be hereafter made by any drainage commissioners to pay warrants shall not exceed twenty per cent of the original cost of organization and construction in addition to the assessments which may be levied under section 41–2536, and such assessments, when made, shall be appor-

tioned and collected as hereinbefore provided for.'' (Sec. 41–2562.)

The statute (sec. 41–2556) further provides that the commissioners ''are hereby authorized and required, annually, to levy an assessment sufficient to liquidate said bonds *at maturity*.'' Now it seems clear to me, that the legislature contemplated that where sufficient money is not raised from assessment made in any one year, on account of the failure of property owners to pay their assessments, it would be the duty of the commissioners the following year to levy a larger assessment sufficient to make up the deficiency carried over from the preceding year, and so on until final maturity of the bonds. The power of the commissioners to make such levy is circumscribed only by the limit of *benefits that have been assessed against the several tracts of land subject to assessment*. But, pursuing this plain statutory provision, there need never be any accumulation of past due bonds.

The facts of this case illustrate the point I am here attempting to make, in this, that the total assessment of benefits against the lands within this drainage district was $291,337.29, whereas, the bond issue was only $68,000. So that assessments might properly be made within the terms of the statute against this property for more than four times the amount of the bond issue and still be within the limits of the assessment of benefits. That, however, was never necessary in this case. There is no complaint that the annual assessments all together exceeded or approached the maximum of benefits assessed against these lands, as is well illustrated by the foregoing excerpt from the testimony of the treasurer.

The lawmakers never contemplated the enactment of a statute that would leave a loophole for public or municipal dishonesty or that would allow a municipal corporation (*Nampa & M. I. Dist. v. Barclay*, 56 Ida. 13, 47 Pac. (2d) 916, 100 A. L. R. 557; *Straus v. Ketchen*, 54 Ida. 56, 28 Pac. (2d) 824; *City of Nampa v. Nampa & M. I. Dist.*, 19 Ida. 779, 115 Pac. 979), to float its bonds for a corporate community improvement and later on repudiate them.

All annual assessments must be uniform for the same year on all the assessable property in the district, without regard to whether any previous assessments are delinquent or have

been paid. If not paid within the delinquency periods allowed, the land must be conveyed under the delinquency statute.

The majority opinion ignores our holding in *Smith v. City of Nampa*, 57 Ida. 736, 68 Pac. (2d) 344, wherein we specifically recognized the difference between "annual instalment assessments as spread on the tax rolls for a specific year," and "aggregate apportionment of benefits." Under these statutes and our repeated decisions thereon, it seems to me that a district always has the opportunity and power to protect itself against delinquent assessments by increase of subsequent annual levies within the limits of the aggregate benefit assessment. Clearly, the payment by the district of county and state taxes on land, the title to which has passed to the district for delinquent assessments, would be comprised within the provisions of section 41-2562, authorizing "assessments for any expense necessarily incurred by them for . . . . maintenance . . . . or any extraordinary reasons, and . . . . may add to said assessment sufficient to pay any deficiency occurring the preceding year or any other unpaid warrant indebtedness. . . . . "

That part of the judgment, decreeing "that the bonds of Drainage District No. 3 ceased to draw interest on the dates of the maturities of said bonds" should be reversed; and that part of the judgment, decreeing "that the defendant is not legally liable for repayment of interest on matured bonds of Drainage District No. 3" should be affirmed.