252 P.2d 190

**SERVICES, Inc. v. NEILL et al.**

No. 7886.

Supreme Court of Idaho.

Jan. 6, 1953.

Robert E. Smylie, Atty. Gen. and J. N. Leggat, Asst. Atty. Gen., for appellants.

Richards, Haga & Eberle, Boise, for respondent.

THOMAS, Justice.

The State Tax Collector fixed and assessed a proposed deficiency of $7,288.19 in the income tax of Services, Inc., a corporation, respondent herein, for the fiscal year ending November 30, 1947. The taxpayer filed a protest with the State Tax Commission and therein sought a redetermination of such deficiency. Upon review, the Commission affirmed the action of the tax collector. Upon appropriate proceedings for review of such action, the Court below reversed and modified the order of the Commission by reducing the deficiency to $36.89. From such judgment of the District Court this appeal was taken by the State Tax Commission.

The transaction and the controlling facts out of which the controversy arose are substantially as follows:

Prior to October 30, 1947, Services, Inc., a corporation, owned and operated a laundry and dry cleaning establishment in Boise, Idaho, including certain lands, buildings and equipment having an admitted tax base of $197,147.18, subject to a mortgage indebtedness of $105,527.50. On October 30, 1947, Services, Inc., sold an undivided one-half interest therein to one M. E. Toliver for $107,000, plus the assumption by Toliver of one-half of the pre-existing mortgage indebtedness, making the total

purchase price to Toliver for such interest $159,763.75; Toliver paid respondent $50,000 cash at the time; the payment of the balance of $57,000 was to be taken care of by deferred installments. There is no tax liability problem involved herein with reference to the transaction between respondent and Toliver.

Pursuant to a pre-arranged plan, on the following day both respondent and Toliver transferred their respective interests in the assets to Troy-Capital, Inc., a new corporation, in exchange for securities of the new corporation consisting of 500 shares of its capital stock, with a par value of $100 per share, and $164,000 of its debenture bonds, the new corporation assuming the mortgage which was a lien upon the assets transferred. Each party received stock of the par value of $25,000 and debenture bonds of the face value of $82,000. $57,000 of the bonds, conceded to belong to Toliver, were issued directly to respondent as a pledge to secure payment of the balance of the purchase price owing by Toliver to respondent. Immediately following such exchange of their respective and equal interests in these assets for the stock and securities of the new corporation, Toliver and respondent were in control of such corporation.

Respondent, for income tax purposes, reported the profit arising from the sale of an undivided one-half interest in the assets to Toliver but made no report concerning the transaction with the new corporation.

It is the contention of appellant that the transfer by respondent of its one-half interest in the assets to the new corporation resulted in a gain, presently taxable. On the other hand, respondent contends that such transaction did not result in a presently recognized gain and that a gain, if there be any, is not recognized for income tax purposes until the investment in the new corporation is finally liquidated and the securities sold. Both parties primarily rely upon Section 63-3006, I.C., which has never been judicially construed. The question is one of first impression here.

The Income Tax Act of Idaho, known as the Property Relief Act of 1931, was enacted in 1931. S.L.1932 (E.S.) Chap. 2. At that time the Federal Income Tax Act, commonly known as the Revenue Act of 1928, was in force. The Federal Revenue Act of 1928 was adopted in substantial part by this state in 1931. At the time of such adoption many sections of the Federal Act had been construed and interpreted, including Section 112, the counterpart of Section 63-3006, I.C.

A statute which is adopted from another jurisdiction, including Federal statutes adopted by a state will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction. This rule has been recognized and applied with reference to the Federal Revenue Act, Girard v. Defenbach, 61 Idaho 702, 106 P.2d 1010, and is further fortified by the provisions of Section 63-

3085, I.C., which has never been amended, providing as follows:

"Rule of decision.—For the purpose of determining gross and net income, depletion, depreciation and obsolescence, in all cases not expressly provided for in this chapter, the provisions of the most recent act of the congress of the United States, commonly known as the Federal Income Tax Act, and the rules, regulations and decisions thereunder, in so far as same are applicable and pertinent and not repugnant to or inconsistent with the express provisions of this chapter, shall be the rule of decision in all courts of this state and by the tax commissioner."

Additionally, the then Tax Commissioner, in May 31, 1941, promulgated, adopted, and published an extensive set of regulations relating to and construing the income tax laws of this state, including therein Article 6.1, page 11, and Article 6.9, page 14, which will be further considered later in this opinion. In the preface of such publication is found the following:

"Since the Property Relief Act of 1931 followed very closely the provisions of the Federal Revenue Act of 1928, the regulations as set forth herein follow the administrative and judicial interpretations adopted under the Federal Acts wherever possible. Many of the sections contained in Regulations 103 issued by the Commissioner of Internal Revenue under the Internal Revenue Code in 1940 have been adopted by specific reference as the official regulations for interpretation of the Idaho Act."

Each party looks to and invokes the provisions of Section 63–3006, I.C., to support its position, particularly Section 63–3006 b.4 and d.1. No part of this entire section has been amended. Section 63–3006, I.C., in pertinent part provides as follows:

"a. Upon the sale or exchange of property the entire amount of the gain or loss, * * *, shall be recognized, except as hereinafter provided in this section.

"b. * * * 4. No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange

* * * * * *

"d. 1. If any exchange would be within the provisions of paragraph 1, 2, or 4 of subdivision b, if it were not for the fact that the property received in exchange consists not only of property

permitted by such paragraph to be received without the recognition of gain, but also of other property or money, than (then) the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

The Commission claims that the exchange of Services, Inc., property for Troy-Capital stock and securities does not come within Section 63–3006 b.4., the controlled corporation section, because the property transferred to the corporation must be *solely* in exchange for stocks or securities of such corporation and that the assumption of the mortgage debt constitutes and is regarded as "money or other property", additionally, under subsection d.1. taking the transaction out of the operation of subsection b.4. and subjecting Services, Inc., to a gain presently taxable because, in substance, it is as if Services, Inc., had, through the new corporation, paid the mortgage obligation.

On the other hand, it is the contention of respondent that Section 63–3006 b.4. and d.1., I.C., as it has been construed by the State Tax Commission and as Section 112 of the Federal Revenue Act, its counterpart, has been construed administratively and in the Federal courts, both before and after the Idaho act was adopted, either a gain or a loss on such transaction is not recognized for tax purposes until the investment is finally liquidated and the securities sold; that the gain or loss is de-

ferred or postponed so long as the original investment is continued and unliquidated, and that the encumbrance of the property transferred or the assumption of such encumbrance is not treated or considered as "other property or money" upon which a gain or loss is presently recognized for tax purposes.

The State act, in substance, being an adoption of the Federal Act of 1928, it is proper, if necessary, to look to the administrative rulings and decisions of the Federal Act prior to its adoption by the State, as an aid in construing the meaning prior to such adoption, Girard v. Defenbach, supra; Caldwell v. Thiessen, 60 Idaho 515, 92 P.2d 1047, because it will be presumed that it was adopted with the construction placed upon it by the federal courts prior to its adoption, Hanson v. Rogers, 54 Idaho 360, 32 P.2d 126; furthermore, a construction given to a statute by executive and administrative officers of states is entitled to great weight and will be followed unless there are cogent reasons for a change. Breckenridge v. Johnston, 62 Idaho 121, 108 P.2d 833.

In 1929, in the case of Tsivoglou v. U. S., 1 Cir., 31 F.2d 706, the court refused to allow the taxpayer to take a loss on a transaction where he had transferred all of his assets to the corporation which assumed all of his business liabilities in exchange for all the stock of the corporation except three qualifying shares; the taxpayer claimed the stock had a value below that of the as-

sets transferred. The court, in refusing to allow him to take the claimed loss, stated that the law looked at the substance of the transaction rather than its form and in so doing observed that there was no real change—the taxpayer having what he had before the exchange and that he had neither gained nor lost by the transaction.

The same principle was recognized and applied in 1930 in Gary v. Commissioner, 18 B.T.A. 1204, by the Treasury Department, relying upon Ralph L. Evans, 8 B.T.A. 543, wherein it was decided that when a transfer to a controlled corporation is made, the liabilities made no difference.

Again, a few months later, in the case of Earle v. Commissioner, 1 Cir., 38 F.2d 965, the Court, and the Treasury Department in the case of National Pipe & Foundry Co. v. Commissioner, 19 B.T.A. 242, applied the rule that neither gain nor loss was recognized. See also Paradox Land & Transport Co. v. Commissioner, 23 B.T.A. 1229, decided in 1931, announcing the same ruling.

Following the enactment of the Income Tax Act of Idaho, the decisions in the Federal courts and the rulings before the administrative boards prior to 1938 were consistently to the effect that upon the transfer of property to a controlled corporation which assumes a pre-existing indebtedness, the assumption of such liabilities by the corporation is not treated as "other property", received under Section 112 (d) (1) of the Federal Revenue Act—the counterpart of Section 63–3006 d.1, I.C.—for purpose of recognizing a gain or loss. Fashion Center Building Co. v. Commissioner, 31 B.T.A. 167; Armstrong v. Commissioner, 31 B.T.A. 418; Starr v. Commissioner, 4 Cir., 82 F.2d 964; Coleman v. Commissioner, 10 Cir., 81 F.2d 455; See also G. & K. Mfg. Co. v. Commissioner, 4 Cir., 76 F.2d 454.

Appellant contends that prior to the amendment of the Federal Revenue Act, in 1939, the exchange of assets for stocks and securities of a controlled corporation is not tax free if the corporation also assumes an indebtedness of the transferors for the reason that such assumption constitutes "money or other property", (income), to the transferors under Section 63–3006 d.1, I.C., relying on Brons Hotels, Inc. v. Commissioner, 34 B.T.A. 376; Haass v. Commissioner, 37 B.T.A. 948, and U. S. v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 656, 82 L.Ed. 1018.

The Brons Hotels case was not decided under Section 112(b) (5) of the Federal Revenue Act of 1928, the counterpart of Section 63–3006 b.4., I.C., relating to controlled corporations but under Section 112 (b) (1), the counterpart of Section 63–3006 b.1., I.C., relating to the exchange of property of like kind and value. The decision therein to the effect that encumbrances constituted a factor in the exchange of property of like kind and equal value is in harmony with all earlier and subsequent decisions under the particular subsection

but lends no support to the proposition of appellant where, as here, the transferee is a controlled corporation.

The Hendler case, decided by the U. S. Supreme Court in 1938, and upon which much reliance is placed by appellant, actually did not arise under the controlled corporation section of the Federal Act, Section 112(b) (5), but under the reorganization section thereof Section 112(b) (3), the counterpart of Section 63–3006 b.3., I.C. There a reorganization involved the Borden Company and Hendler Creamery Company whereby the Borden Company, in exchange of corporate properties, also assumed a bonded indebtedness of Hendler Creamery Company in the sum of $534,297.-40, which it paid in full within a week thereafter. The court, in holding under such facts that the discharge of the liability constituted income (money or other property) to the Hendler Company, had this to say:

"It was contended below and it is urged here that since the Hendler Company did not actually receive the money with which the Borden Company discharged the former's indebtedness, the Hendler Company's gain of $534,297.40 is not taxable. The transaction, however, under which the Borden Company assumed and paid the debt and obligation of the Hendler Company is to be regarded in substance as though the $534,297.40 had been paid directly to the Hendler Company. The Hendler Company was the beneficiary of the discharge of its indebtedness. Its gain was as real and substantial as if the money had been paid it and then paid over by it to its creditors. The discharge of liability by the payment of the Hendler Company's indebtedness constituted income to the Hendler Company and is to be treated as such."

That the import and implication of the decision in the Hendler case was viewed with alarm, in that it had apparently upset administration rulings and judicial construction of the Act over the years, as well as threatened to subject many consummated transactions to deficiency tax assessment, because of the general belief and long standing interpretations of the Act that such transactions did not involve any element of immediate taxability, is manifest by the following:

"For many years the Treasury accepted the principle that receipt of assets in an exchange with assumption of liabilities, or with the assets conveyed subject to liabilities, was in effect the receipt of net assets. Consequently, it did not consider the assumption of liabilities as additional property or 'boot'. Early in 1938, however, the Supreme Court held in U. S. v. Hendler (303 U.S. 564, 58 S.Ct. 655) that assumption and payment of liabilities in an exchange otherwise nontaxable constitutes receipt of 'boot' with resulting taxable income. This decision threw into confusion the whole ques-

tion as to (1) whether nontaxable re-organizations resulted from certain exchanges in which liabilities were assumed and (2) what the basis of assets received in such cases should be. *To correct the situation and conform with Treasury practice and the long-standing interpretation of the law by everyone,* Congress enacted section 112(k) of the Code (discussed in Chapter 4), which provides that, in transactions coming within section 112(b) (4), (b) (5) or (b) (10), the assumption of liabilities or the taking of property subject to liabilities shall not be considered as 'boot' that is, 'other property or money' within the meaning of section 112(c), (d) or (e)." Montgomery Federal Taxes, Vol. 1, Page 329.

The decision in the Haass case was rendered shortly after and based upon and followed the decision in the Hendler case before Congress amended the Act.

While the implications and the application of the decision in the Hendler case, without subsequent Congressional action, might have supported the contention of appellant, under the Federal Act it does not necessarily follow that it would apply or have any bearing on the construction of the Idaho Act. However, the Federal Statute was amended in 1939 and without doubt because of the decision in the Hendler case, as is reflected in the committee notes, House Report No. 855, 76th Congress, 1st Session, page 18, as follows:

"Since transactions entered into under such acts were made under the understanding of the law that such assumptions of, and taking subject to, liabilities did not give rise to recognizable gain, it is necessary, in order to prevent hardship on taxpayers and to prevent tax avoidance, to provide retroactively for the application of the rules above provided."

Accordingly, in 1939, Section 213(a) of 1939 Revenue Act, Section 112 was amended as follows:

"Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under section 213 of the Revenue Act of 1939 it is not considered as 'other property or money') shall be considered as stock or securities received by such transferor. * * *" c. 247, Sec. 212(h), 53 Stat. 872.

and by adding subsection (k) which provides in pertinent part as follows:

"Where upon an exchange the taxpayer receives as part of the consideration property which would be permitted by subsection (b) (4) or (5) of this section to be received without the recognition of gain if it were the sole con-

sideration, and as part of the consideration another party to the exchange assumes a liability of the taxpayer or acquires from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as 'other property or money' received by the taxpayer within the meaning of subsection (c), (d), or (e) of this section and shall not prevent the exchange from being within the provisions of subsection (b) (4) or (5); except that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition was a purpose to avoid Federal income tax on the exchange, or, if not such purpose, was not a bona fide business purpose, such assumption or acquisition (in the amount of the liability) shall, for the purposes of this section, be considered as money received by the taxpayer upon the exchange. * * *"

The amendment was made retroactive. Section 213(f), Revenue Act 1939.

Subsequent to the amendment of the Federal Act and on May 31, 1941, the Tax Commissioner of Idaho promulgated, adopted and published rules with reference to the Income Tax Act of Idaho, which have been since then effective without change; neither has the Legislature

seen fit to amend the statute in question, either after the amendment of the Federal Act or the adoption of the Rules by the State Tax Commissioner.

Art. 6.1 of such regulations, at page 11, appertaining to the exceptions of recognizing gain or loss from sales and exchanges as provided in Section 63–3006, I.C., set forth the reasoning behind the rule and the statute, which excepts the transaction here involved from taxability as follows:

"* * * The underlying assumption of these exceptions is that the new property is substantially a continuation of the old investment still unliquidated; and, in the case of reorganizations, that the new enterprise, the new corporate structure, and the new property are substantially continuations of the old still unliquidated. * * *"

Again, in Art. 6.9 at page 13 of the published regulations with reference to the receipt of other property or money, it is provided:

"* * * Consideration received in the form of an assumption of liabilities is to be treated as 'other property or money' for the purposes of *so much of Section 6(d) as relates to Section 6(b) (1), and (2.*" (Emphasis supplied.)

Section 6 of the regulations corresponds with Section 63–3006, I.C.; subsection d thereof provides that if other property or money is received, then the gain shall be recognized in an amount not in excess of

the sum of such money and the fair market value of such other property.

It is clear under the regulations that subsections b.1 and b.2 of Section 63–3006, I.C., which correspond with Sec. 6 b.1 and 2 of the regulations, refer to an exchange of property for property of like kind and equal value, and an exchange of stock for stock; with either of such transactions we have no concern in this case.

The regulation, it is to be noted, with respect to the treatment of the assumption of liabilities as "money or other property", for the purpose of determining presently taxable gain or loss, clearly excludes from such treatment transactions where property is transferred to a controlled corporation, where immediately following such exchange such persons are in control of the corporation, and the amount of the stock and securities received by each is substantially in proportion to their respective interest in the property prior to the exchange under Section 63–3006 b.4., I.C. Hence, it is apparent from the regulations that Idaho does not recognize assumed liabilities as other property in such an exchange, and, as pointed out earlier, it is not so recognized under the Federal Act either. Even without the support of the Federal Administrative rulings and decisions and Federal judicial decisions, there is ample support in our own regulations for the proposition that the exchange is not presently taxable because the assumption of the liabilities is not "other property"; such regulation will

be followed and applied unless cogent reasons for holding otherwise are shown. Breckenridge v. Johnston, 62 Idaho 121, 108 P.2d 833. No such reasons appear why it should not be followed and applied where, as here, property is transferred to a controlled corporation under and otherwise in compliance with Section 63–3006 b.4, I.C. With respect to other transactions under Section 63–3006 I.C., and the regulations so adopted and promulgated, we have no present concern, nor do we express an opinion thereon.

 It follows that the amount of the indebtedness assumed in an exchange provided for in Section 63–3006 b.4 and d.1, I.C., is not taxable as income at the time such exchange is consummated; the administrative rulings and the decisions in the Federal Court under a like Federal Act prior to the Hendler decision were all in accord both under the re-organization section which does not apply here and under the controlled corporation section which is applicable.

Throughout the administrative rulings and judicial decisions runs the thought that in such transactions the assumption of the indebtedness does not constitute "money or other property", and that the taxation of such gains is deferred or postponed until such gains are in effect realized by the transferors through the liquidation of the stocks or securities or other property received; it was the purpose of the statutes of Idaho and the intention of the Legis-

lature that a gain in such a transaction would not be presently recognized for immediate taxation to the extent it consisted of an assumption of the debts against the assets of the transferors which were transferred to the new controlled corporation; the assets so transferred in the instant case were subject to this indebtedness which constituted a lien thereon; the debts were not thereby reduced nor were the assets so transferred freed from the obligation of the mortgage indebtedness assumed; the taxpayer had no more than before the exchange. It is apparent that the Legislature, in referring to the receipt of stocks and other securities under subsection b.4., and the receipt of money and other property under subsection d.1., and the administrative agency in adopting the above rules, did not intend presently to subject to taxation that portion which is represented by the assumption of the indebtedness as equivalent to money or other property received by the taxpayer; the realistic conception which the Legislature and the administrative agency adopted thereunder reveals that under such an arrrangement the substantial value which the transferor owns is an equity in the assets, that is, the value of such assets after provision has been made for the payment of the debts chargeable thereto, and that what the transferee, the new corporation, actually acquired was this equity; this does not necessarily mean that any gain derived and realized by the transferors from the assumption of the debts will entirely escape taxation; the

entire profit will be recognized when ultimate liquidation of the assets received in exchange has taken place; it only means that the payment of the tax is deferred or postponed until such event.

We hold that the exchange and transfer of assets by the taxpayer to the controlled corporation was solely for stock and securities of such corporation under Section 63–3006 b.4 and that no gain for income tax purposes for the fiscal year 1947 is recognizable thereunder.

Judgment affirmed. Costs to respondent.

PORTER, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.